**FEDERAL BEEF PROCESSORS, INC.**

v.

**Richard E. LYNG, in his official capacity as Secretary of Agriculture for the U.S. Department of Agriculture.**

Civ. No. A3–87–176.

United States District Court,
D. North Dakota,
Southeastern Division.

Dec. 3, 1987.

Frank R. Berman, Minneapolis, Minn., Douglas R. Herman, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N.D., for plaintiffs.

Lynn C. Jordheim, Ass't. U.S. Atty., Bismarck, N.D., Harold J. Reuben, Office of General Counsel, U.S. Dept. of Agriculture, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

On November 10, 1987, plaintiffs filed this action and moved for a preliminary injunction ordering the Secretary of Agriculture to grant inspection to the plaintiffs of their meat packing plant, located in West Fargo, North Dakota. On the same date, this court issued an Order to Show Cause why preliminary injunctive relief should not issue; oral argument was had on the issue on November 17, 1987.

The most pressing issue before the court is that of subject matter jurisdiction. The parties have now submitted briefs on the issue, and the court is prepared to rule.

The factual background is:

Marshall Chernin pleaded guilty in 1984 to seven felony counts for wire fraud, transporting stolen money in interstate commerce, and conspiracy involving matters regulated by the Packers and Stockyards Administration (P & SA). These counts all related to Chernin's embezzlement of corporate funds while he was plant manager at Long Prairie Packing Company, in Long Prairie, Minnesota. The P & SA violations involved fictitious livestock purchases, the keeping of two sets of records, concealing the inventory of assets at the end of the fiscal year, and the presentation of false reports of assets to outside auditors for the end of the fiscal year audit of the Long Prairie Packing Company. Defendant's Exhibit C (doc. 8).

Federal Beef Processors, Inc. [hereinafter referred to as Federal Beef], is a Minnesota corporation. On August 31, 1987, Federal Beef was incorporated, and entered into a purchase agreement and an agreement to lease a slaughterhouse and beef processing facility from Held Beef Processors, Inc. Affidavit of Robert Goldberger 1.

On September 21, 1987, Federal Beef applied for inspection by the United States Department of Agriculture [USDA]. Shareholders at that time were Robert and Ralph Goldberger (holding an aggregate of 50%), and Ralph Chernin (50%). Ralph Chernin proposed that his brother, Mar-

shall Chernin, an alleged expert in the meat industry, be the president of Federal Beef, in order to protect Ralph Chernin's interest in the company. Accordingly, the application for inspection indicated that Marshall Chernin was the president of Federal Beef. Affidavit of Ralph Goldberger at 2–3, par. 5.

Immediately thereafter, Federal Beef was informed that additional equity requirements would be imposed by the bank financing the project. Ralph Chernin decided to withdraw from the project, and Howard Goldberger was substituted for Marshall Chernin as president of the corporation.

On September 24, 1987, Ralph Goldberger contacted the USDA and inquired regarding the status of the application; he was informed that the USDA was unwilling to grant inspection while Marshall Chernin, a felon, remained in a position of responsibility with Federal Beef. *Id.*

On September 29, 1987, a meeting was held with Hal Reuben, Office of General Counsel, USDA; Emil Thrasher, Richard Van Blargan, Robert Goldberger, and Goldberger's attorney, Frank Berman. Goldberger and Berman advised the USDA that the previous application was erroneous, that Chernin would not be the president of Federal Beef, but would be employed in an advisory position. This position would involve Chernin in the procurement of livestock. The USDA stated that he would then be in a position to obligate funds of the corporation, and would be considered "responsibly connected" if employed in that capacity. The USDA instructed Federal Beef to list all corporate officials and management officials on their new application for inspection, and to submit a letter outlining Chernin's duties and responsibilities. Defendant's Exhibit C at 2 (doc. 8).

On September 30, 1987, the USDA informed Goldberger and Berman during a telephone conference call that it was highly unlikely that inspection would be granted while Chernin was employed in any responsibly connected position. *Id.*

Federal Beef subsequently submitted an updated application dated September 28, 1987, along with a letter withdrawing the previous application. The updated application listed only Robert and Howard Goldberger as persons responsibly connected with the corporation, and listed John Tasset as plant manager, Howard Ellis as livestock procurement manager, Ted Hawken as controller, and Wayne Pinchart as boning and sales manager. Plaintiff's Exhibit A (doc. 4). The USDA deemed this application insufficient, and accordingly, Robert Gonter, Assistant Deputy Administrator of the Compliance Program, instructed Ronald Cipolla, Assistant General Counsel with the Office of General Counsel, to prepare an administrative complaint refusing inspection service and affording Federal Beef an opportunity for an expedited hearing before a USDA administrative law judge. *Id.*

In mid-October, the USDA and Federal Beef, through the mediation efforts of Senator Rudy Boschwitz, Minnesota, attempted to negotiate conditions under which the USDA would be willing to grant inspection. These negotiations eventually fell through, and on November 9, 1987, the USDA filed its administrative complaint; on November 10, 1987, Federal Beef filed this lawsuit.

*Discussion of Law*

The defendant asserts that this court lacks subject matter jurisdiction over the action, pursuant to section 671(c), Title 21, which provides:

Any determination and order of the Secretary issued under subsection (a) or (b) shall be conclusive and enforceable unless the affected applicant for, or recipient of, inspection service or the affected individual files, not later than 30 days after the effective date of such order, a petition for review of such order in the United States Court of Appeals for the District of Columbia Circuit or the *court of appeals for the circuit in which the relevant establishment is doing business.*

21 U.S.C.S. § 671(c) (Supp.1987) (emphasis added). The Secretary argues that even if the administrative proceedings were completed (which they are not), appeal would

be directly to the Court of Appeals for the Eighth Circuit, and not to this court.[1]

The plaintiff argues that this court has mandamus jurisdiction over this action, pursuant to section 1361, Title 28, United States Code, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty *owed to the plaintiff.*

28 U.S.C.S. § 1361 (1977) (emphasis added). The plaintiff argues that the Secretary is required to inspect its facility under sections 603, 604, 605, and 606 of Title 21, United States Code, and that the Secretary therefore owes a duty to the plaintiff to inspect.

This court disagrees. Although those sections do contain mandatory language directing the Secretary to perform various inspections, the clear language of section 671 qualifies and limits that mandatory language to allow the Secretary to delay or refuse inspection where it deems that a person "responsibly connected" with the applicant is "unfit" by reason of a felony conviction. The law provides:

> The Secretary may (for such period, or indefinitely, as he deems necessary to effectuate the purposes of this Act) refuse to provide, or withdraw, inspection service ... with respect to any establishment if he determines ... that such applicant or recipient is unfit to engage in any business requiring inspection ... because ... anyone responsibly connected with the applicant or recipient, has been convicted, in any Federal or State court, of ... any felony.

21 U.S.C.S. § 671(a) (Supp.1987). This function is discretionary, and, as in this case, overrides any other duty the Secretary may have to grant inspection.

Since the Secretary does not owe this plaintiff a duty to grant inspection, this court lacks mandamus jurisdiction. Further, this court finds that it lacks federal question jurisdiction over this case pursuant to the operation of section 671(c), Title 21, United States Code. This court feels compelled, however, to make some final comments.

This entire file is a tribute to a total absence of common sense. Congress has established a meaningless test and clothed the Secretary of Agriculture with absolute discretion based upon the meaningless test. Thereafter, in order to prevent the federal district courts from meddling, Congress provided that appeals from the Secretary's exercise of discretionary power are filed with the Circuit Court of Appeals.

One might assume that entrusting an administrative appeal only to a three-judge panel is entirely appropriate in matters touching upon national security or the safeguarding of nuclear secrets, but where the matter relates to the refusal to provide inspection services to a small meat plant because a marketing consultant has been convicted of income tax evasion, the rationality of the law becomes suspect.

I visualize a scenario where Mavis Mudlark, at age 19, is convicted of a federal felony for falsely certifying to the Social Security Administration that she was a full-time student in order to get another payment. Her punishment was probation and restitution of the $380.00. She has since obtained a degree in accounting, and now, at age 40, is promoted to a supervisory position with a meat packing plant, Riverbank's only industry.

The purpose of the inspection law is to "assure consumers of wholesome and healthy meat products, and further, that livestock producers and conscientious meatpackers and operators will benefit by the elimination of the unscrupulous in the meat industry." S.Rep. No. 799, 90th Cong., 1st Sess., *reprinted in* 1967 *U.S. Code Cong. & Admin.News* 2188, 2191.

It is a quantum leap in typical bureaucratic illogic to equate the felony conviction of Mavis Mudlark with "unfitness" to su-

---

1. Both parties have extensively briefed the issue of exhaustion of administrative remedies. Because this court finds that it is without subject matter jurisdiction, this issue is irrelevant, and will not be addressed.

pervise the accounting department and deem that the industry needs protection from her employer. Perhaps Congress felt that only a Circuit Court could properly appreciate the subtle nuances of the situation.

The Department of Agriculture does not have the sole right to claim a paucity of common sense. The employer could start up the business by agreeing not to hire, use, employ, consort with or send a valentine to the convicted felon. If speed is so important, the business could be started and the validity of the department's position litigated thereafter, unless realities of financing, etc., are tied to the employment of Mr. Chernin.

In all events, this court lacks jurisdiction, and cannot reach the "merits" of the dispute. Accordingly, it is the ORDER of this court

THAT THE PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF IS DENIED, AND THAT THE CASE IS DISMISSED FOR LACK OF JURISDICTION.