**Marshall CHERNIN, Appellant,**

v.

**Richard E. LYNG, Secretary, United States Department of Agriculture, Appellee.**

**No. 88–5440.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1989.

Decided May 3, 1989.

Stephen L. Urbanczyk, Washington, D.C., for appellant.

Jeffrey Clair, Washington, D.C., for appellee.

Before LAY, Chief Judge, and ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

Marshall Chernin lost his job with Federal Beef Processors, Inc., after the United States Department of Agriculture (USDA) determined that Chernin's connection to Federal Beef rendered the company unfit to engage in the meatpacking business. Under the authority of 21 U.S.C. § 671(a), the USDA refused to provide Federal Beef with inspection services required by law (without which meatpackers may not operate) until Federal Beef agreed to sever its connection with Chernin. Chernin filed this lawsuit, claiming that the USDA's actions deprived him of employment without due process of law and exceeded the scope of the agency's statutory authority. The District Court dismissed Chernin's complaint. Because Chernin's complaint alleges sufficient grounds for relief under the Due Process Clause of the Fifth Amendment, we reverse and remand for further proceedings.

## I.

According to his complaint, Marshall Chernin has worked in the livestock industry in North Dakota and Minnesota for over thirty years. During this time, he has developed a considerable expertise in buying and selling cattle, a talent which he claims has made him an unusually valuable managerial employee in the meatpacking industry.

In 1984, Chernin pleaded guilty to seven counts of wire fraud, income-tax evasion, conspiracy to defraud, and providing false statements to the government, in connection with a fraudulent accounting scheme he participated in as plant manager of the Long Prairie Packing Company in Long Prairie, Minnesota. After serving thirty months in federal prison, Chernin was released in October 1986.

In September 1987, a newly incorporated meatpacking company, Federal Beef Processors, applied for USDA inspection services required under the Federal Meat Inspection Act, 21 U.S.C. §§ 601 *et seq.*, at its new plant in West Fargo, North Dakota. Federal Beef's initial application listed Marshall Chernin as president of the company.

The USDA refused inspection services under § 671(a), on the ground that the involvement of Chernin, a convicted felon, rendered the plant unfit for operation. Shortly afterward, Federal Beef filed a second application naming co-owner Howard Goldberger as president, and proposing to use Chernin only as a consultant. Chernin alleges that this position would not have given him any significant decision-making authority in the operation of the plant. Nevertheless, the USDA continued to refuse inspection services.

On November 9, 1987, the USDA filed an administrative complaint against Federal Beef under 7 C.F.R. § 1.133(b)(1) which would have brought the denial of Federal Beef's application before an administrative law judge. The next day, Federal Beef filed suit in the United States District Court for the District of North Dakota seeking a mandamus order directing the USDA to provide inspection services. On December 3, 1987, the District Court dismissed Federal Beef's action for lack of subject-matter jurisdiction. *Federal Beef Processors, Inc. v. Lyng,* 674 F.Supp. 777 (D.N.D.1987). At this point (Chernin claims) Federal Beef had postponed the opening of its West Fargo plant for over three months, and was sustaining considerable losses while the plant remained idle because of USDA's denial of inspection services. According to Chernin, this severe economic pressure forced Federal Beef to settle the dispute without proceeding to an administrative hearing. On January 5, 1988, Federal Beef and the USDA signed a Stipulation and Consent Decision, which provided that Federal Beef would permanently divest Chernin of any connection to its operations, and would deny him access to its plant, within nine months of the commencement of inspection services. The Consent Decision further required that Chernin would not consult with, provide any direction or advice to, or have any business dealings with Federal Beef after nine months from the commencement of USDA inspection. Chernin claims that he was never given an opportunity to participate in either the administrative proceedings or the negotiations between Federal Beef and USDA which produced the Consent Decision.

Inspection service began at the Federal Beef plant on January 13, 1988. On August 19, 1988, Chernin filed this lawsuit, challenging the enforcement of the Consent Decision on constitutional and statutory grounds. On October 12, 1988, the District Court denied Chernin's motion for a preliminary injunction and awarded summary judgment[1] to the USDA. *Chernin v. Lyng,* Civ. No. A3–88–144, slip op. (D.N.D. Oct. 12, 1988). On October 14, 1988, Chernin left Federal Beef, as required by the Consent Decision.

Chernin now brings this appeal from the District Court's judgment. We denied Chernin's motion for an injunction pending appeal, and expedited the appeal, accepting the parties' briefs on Chernin's motion for injunction as briefs on the merits of the appeal.

## II.

■ In requiring that Federal Beef fire Chernin, USDA officials acted under the authority of 21 U.S.C. § 671(a), which provides:

> The Secretary may (for such period, or indefinitely, as he deems necessary to effectuate the purposes of this chapter) refuse to provide, or withdraw, inspection service under subchapter I of this chapter with respect to any establishment if he determines, after opportunity for a hearing is accorded to the applicant for, or recipient of, such service, that such applicant or recipient is unfit to engage in any business requiring inspection under subchapter I of this chapter because the applicant or recipient, or anyone responsibly connected with the applicant or recipient, has been convict-

---

**1.** Although the District Court's final judgment came in response to the USDA's motion to dismiss, the Court considered several affidavits submitted by both parties. By considering matters outside the pleadings, the Court effectively treated the USDA's motion to dismiss as a motion for summary judgment. See Fed.R.Civ.P. 12(b).

ed, in any Federal or State court, of ... any felony.

Section 671(a) is not a mandatory provision that directs the USDA to deny inspection services automatically to any meatpacking firm employing a convicted felon in a position of responsibility. Instead, the statute authorizes the USDA to refuse inspection services if the agency determines that the felon's connection to the firm renders it unfit to engage in the meatpacking business. To reach this determination, the agency must form a judgment about the nature of the employee's offense, including any mitigating circumstances, and the extent to which this past criminal conduct threatens the objectives of the Federal Meat Inspection Act. See *Utica Packing Co. v. Block,* 781 F.2d 71, 74, 78 (6th Cir. 1986); *Wyszynski Provision Co. v. Secretary of Agriculture,* 538 F.Supp. 361, 364 (E.D.Pa.1982).

■ In determining an applicant firm's unfitness, the USDA is governed by the normal requirements of administrative legal process. The Act gives firms applying for inspection services an opportunity for an adversary hearing prior to the determination of unfitness, see 21 U.S.C. § 671(a), under procedures outlined in 7 C.F.R. §§ 1.130 *et seq.* Final determinations of the agency are reviewable in the courts of appeals, see 21 U.S.C. § 671(c). The statutory provision for a right to an administrative hearing and judicial review mentions only the firms that seek inspection services; the Act does not explicitly give employees like Chernin, whose jobs may be forfeited by a determination of unfitness, a separate right to be heard before the agency or the courts.

This case presents the question whether the Due Process Clause gives an employee like Chernin a claim to some form of legal process when the government requires his employer to terminate him. We conclude that it does, and that Chernin's complaint alleges facts sufficient to state a claim under the Due Process Clause.

In reaching the opposite conclusion, the District Court held that Chernin had not been deprived of any property or liberty interest protected by the Due Process Clause. The District Court found that Chernin's allegation that he had an indefinite oral employment contract was "somewhat vague" at best, and that the terms of this claimed agreement were not specific enough to be enforceable. *Chernin v. Lyng, supra,* slip op. at 4–5. The USDA argues from this finding that Chernin had no "legitimate claim of entitlement" to his continued employment at Federal Beef which would establish an interest cognizable under the Due Process Clause, citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), and *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985).

■ It is certainly true that employees at will, by definition, have no claim of entitlement to continued employment enforceable against their employers. This basic axiom of employment law applies as much for public employees as it does for employees in the private sector. Where, as in *Roth, Bishop,* and *Loudermill,* public employees claim that the adverse action of their governmental employer has deprived them of some interest without due process, courts must identify what interests in continued employment, "defined by existing rules or understandings that stem from an independent source such as state law[,]" the claimants can enforce against their employers. *Roth, supra,* 408 U.S. at 577–78, 92 S.Ct. at 2709. If an employee has no independently cognizable claim of legal right against a governmental employer, then the Due Process Clause does not, by itself, supply one.

■ The difficulty with the USDA's present reliance on cases like *Roth* is that it confuses the constitutional principle (namely, that the Due Process Clause is not an independent source of substantive rights) with a specific proposition about what those rights are (namely, that employees at will have no enforceable rights concerning their employment against anybody). The latter proposition misstates

both *Roth* and the common law of employment. While an employee like Chernin may not have any claim to continued employment enforceable against his employer,[2] he does have a right enforceable in law against third parties who unlawfully interfere with the employment relation. On this basis, the Supreme Court held that an employee at will has a "right ... to continue in employment unmolested by efforts to enforce void enactments" sufficient to give him a constitutional cause of action to challenge a state law which compelled his employer to fire him. *Truax v. Raich,* 239 U.S. 33, 38, 36 S.Ct. 7, 9, 60 L.Ed. 131 (1915). The Court in *Raich* specifically rejected the state's argument, which the USDA echoes in this case, that employees at will have no constitutionally protected interest in their jobs:

> It is said that the bill does not show an employment for a term, and that under an employment at will the complainant could be discharged at any time for any reason or for no reason, the motive of the employer being immaterial. The conclusion, however, that is sought to be drawn is too broad. The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will.

*Id.* at 38, 36 S.Ct. at 9 (citations omitted). According to *Raich*, the common law protects employees at will from outside interference in their employment, and this right provides a constitutional cause of action when a governmental agent unlawfully interferes with the employment relation.

The claim upheld in *Raich* arose under substantive due process. The statute attacked forbade the employment of aliens, and the Supreme Court held it unconstitutional without regard to any procedure afforded the discharged employee. But the *Raich* principle has been applied in more recent times to claims of deprivation of procedural due process. The Court has continued to hold that both employees and employers have an interest in the employment relation protected from arbitrary government action by the Due Process Clause. In *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959), the Court reiterated that "... the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment ...," citing *Raich, inter alia.* In *Greene*, the Court held that an aeronautical engineer, who was discharged from his job with a private manufacturer after his security clearance was revoked by the government, had a right to an administrative hearing with full procedural safeguards. Although (as the USDA stresses) *Greene* was decided on statutory grounds, it is clear from the Court's opinion that its decision to read a hearing requirement into the relevant statutes resulted from the "serious constitutional problems" which arose from the agency's failure to provide for the due-process rights of those affected. 360 U.S. at 507, 79 S.Ct. at 1419. The *Greene* Court explicitly held that the plaintiff engineer

---

2. We assume, for present purposes, that Chernin was an employee at will. We do not decide, however, whether the District Court was correct in granting summary judgment against Chernin's claim that he had an enforceable contractual interest in continued employment. Chernin had submitted an affidavit in which he alleged that he had reached an oral understanding with the Goldbergers (co-owners of Federal Beef) that, in return for his services, he would not be dismissed as long as the Goldbergers owned the plant and he carried out his duties responsibly. Affidavit of Chernin, ¶ 7. While, on its own terms, the affidavit is "some-

what vague," we do not necessarily agree with the District Court that Chernin could not have proved his allegation with sufficient concreteness at trial. Chernin was entitled to have the facts set forth in his affidavit viewed in the light most favorable to him, with the benefit of all reasonable inferences to be drawn from them. See *Economy Housing Co. v. Continental Forest Products, Inc.,* 757 F.2d 200, 203 (8th Cir.1985). Under this standard, it is doubtful whether the District Court properly granted summary judgment on Chernin's claim of a contractual entitlement to his job.

had a right to claim relief for the "substantial injuries" caused by the government's action, and the Court invoked the same analogy to an employee's "legally protected right to be free from arbitrary interference with private contractual relationships" explained in *Raich*. 360 U.S. at 493 n. 22, 79 S.Ct. at 1412 n. 22.

In finding the presence of a property interest, the *Greene* Court did not find it necessary to mention whether the plaintiff had an enforceable contract for any future term with his employer, or whether his employment was merely at will. Neither did the Court in *Federal Deposit Insurance Corp. v. Mallen*, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988), in which the FDIC acted under its statutory authority to prohibit a bank president under indictment from participating in the affairs of his employer, a federally-insured bank. The Court held simply:

> It is undisputed that [the bank official's] interest in the right to continue to serve as president of the bank and to participate in the conduct of its affairs is a property right protected by the Fifth Amendment Due Process Clause.... [T]he FDIC cannot arbitrarily interfere with [the bank official's] continuing employment relationship with the bank.... It is also undisputed that the FDIC's order of suspension effected a deprivation of this property interest. Accordingly, [the bank official] is entitled to the protection of due process of law.

108 S.Ct. at 1787 (citations omitted). At no point in its opinion did the *Mallen* Court find it necessary to discuss whether the indicted bank official had any legally enforceable agreement with his employer, which might have entitled him to relief had

the bank decided to fire him on its own initiative. If (as the USDA argues) an employee must show an entitlement to future employment enforceable against the employer to claim the protection of the Due Process Clause, then the Court's failure to mention this essential contractual element of the employee's property interest in *Greene* and *Mallen* leaves an astonishing gap in the Court's analysis in those cases. We conclude that the more natural reading of *Raich*, *Greene*, and *Mallen*, is that employees and employers [3] have an interest in their employment relations which the Fifth Amendment protects from arbitrary government interference, regardless of whether the same employees and employers may dissolve their relationship at will.

### III.

◼ The USDA's next line of argument turns from the Due Process Clause to the statutory text of § 671(a). The USDA urges that Chernin's interest in keeping his job falls outside the zone of interests protected by the Federal Meat Inspection Act. The agency points to the provision in § 671(a) for the employer (i.e., the business applying for inspection services) to contest the USDA's allegation of unfitness, and suggests that the statute's failure to include a similar hearing right to the targeted employee demonstrates Congress's intent to exclude such employees from the administrative process. The USDA also suggests that the provision of such a right to employees like Chernin will only disrupt enforcement of the statute. Citing *Block v. Community Nutrition Institute*, 467 U.S. 340, 347–48, 104 S.Ct. 2450, 2454–55, 81 L.Ed.2d 270 (1984), and *Clarke v. Secu-*

---

3. This protection applies as fully for an employer's right not to hire as for an employee's right to be hired. In *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987), the Court ruled that an employer had a constitutionally protected property right to discharge its employees which was infringed by an order of reinstatement by the Department of Labor. Although the members of the Court were divided over what process was due to the employer, and at what time (before or after the ordered reinstatement), each opinion endorses or assumes the proposition that an employer's

right to fire employees is protected by the Fifth Amendment, and entitles the employer to some kind of process attendant to deprivation. See *Roadway Express*, 481 U.S. 252, 260–63, 107 S.Ct. at 1746–48 (plurality opinion of Marshall, J., joined by Blackmun, Powell, and O'Connor, JJ.); *id.* at 269, 107 S.Ct. at 1751 (Brennan, J., concurring in part and dissenting in part); *id.* at 271–72, 107 S.Ct. at 1752–53 (White, J., joined by Rehnquist, C.J., and Scalia, J., concurring in part and dissenting in part); *id.* at 277–78, 107 S.Ct. at 1755–56 (Stevens, J., dissenting in part).

*rities Industry Association,* 479 U.S. 388, 399, 107 S.Ct. 750, 756, 93 L.Ed.2d 757 (1987), the USDA concludes that Chernin lacks standing to bring an action under the statute to ensure proper enforcement of the provisions of § 671(a).

The USDA's reliance on "zone of interest" cases obscures the basic difference between statutory and constitutional claims. In the "zone of interest" cases, plaintiffs whose economic interests were affected by agency orders asserted standing to seek judicial review to determine whether the agency had interpreted the statute correctly.[4] The plaintiffs' interest in those cases (i.e., milk consumers' interest in milk pricing, and securities brokers' interest in limiting brokerage at branch banks) were nowhere near substantial enough to qualify as constitutionally protected interests in property or liberty. Far from conducting an analysis under the Due Process Clause, the Court in those cases considered simply whether the plaintiffs' interests were sufficiently related to the statutory purpose to justify the inference that Congress intended this class of plaintiffs "to be relied upon to [enforce the legislative intent by] challeng[ing] agency disregard of the law." *Securities Industry Ass'n,* 479 U.S. at 399, 107 S.Ct. at 756 (quoting *Community Nutrition Institute,* 467 U.S. at 347, 104 S.Ct. at 2454).

In constitutional cases, a different analysis applies. A constitutional right asserted against an agency is typically an interest very much at odds with the statutory purpose. For example, in *Greene,* the right of an engineer of questionable loyalty to remain in a sensitive job was a right which, by definition, impeded the operation of the security clearance laws. In *Mallen,* the right of an indicted bank officer to retain his position was precisely the kind of interest which made the FDIC's enforcement of the banking laws to some extent more diffi-

cult. Although rights jeopardized by agency action may often create an impediment to the administration of an otherwise valid statute, the statutory purpose cannot supersede the constitutional guarantee of due process.

In this case, it may be true (as the USDA vigorously argues) that Chernin's interest in keeping his job is "inconsistent with the purposes implicit in the statute" within the meaning of the "zone of interest" test. *Securities Industry Ass'n,* 479 U.S. at 399, 107 S.Ct. at 756. Nevertheless, Chernin's standing to claim due process of law derives, not from congressional intent in the Federal Meat Inspection Act, but from the Fifth Amendment itself.

### IV.

The USDA argues next that Chernin's right to a hearing has been foreclosed by the Consent Decision reached between Federal Beef and the USDA. The USDA suggests that because Federal Beef freely chose to enter into the agreement to fire Chernin rather than to pursue its administrative remedies, Chernin's termination is the result of a purely private decision which does not bring the Due Process Clause into play. We disagree.

Chernin's complaint alleges that Federal Beef wished to retain Chernin, but was forced to agree to the Consent Decision because it was under severe economic pressure from the USDA's refusal to provide inspection services. Complaint ¶ 29. Chernin submitted an affidavit from a co-owner of Federal Beef which appears to support this contention. Affidavit of Robert Goldberger, ¶¶ 5–7. The truth of Chernin's contention remains to be proved at trial. However, the facts Chernin alleges would certainly support the conclusion that the USDA "has exercised coercive power or

---

**4.** In *Community Nutrition Institute,* the Court held that an organization representing milk consumers lacked standing to challenge milk pricing orders issued by the USDA under the Agricultural Marketing Agreement Act. 467 U.S. at 348, 104 S.Ct. at 2455. In *Securities Industry Ass'n,* the Court held that a trade association representing securities brokers, underwriters,

and investment bankers did have standing to challenge the Comptroller of the Currency's interpretation of the National Bank Act permitting banks to operate discount brokerage services at branch facilities inside and outside their home states. 479 U.S. at 399–403, 107 S.Ct. at 756–59.

has provided such significant encouragement" that Federal Beef's decision to fire Chernin must be deemed to be that of the government. *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982). The USDA's refusal to provide meat inspection services had the same compulsory effect on Federal Beef as the government's threatened refusal in *Greene* to give defense contracts to the employer of an engineer without a security clearance, or the FDIC's refusal in *Mallen* to allow a federally insured bank to operate with an officer under indictment. In *Greene* and *Mallen,* the Court assumed what was equally obvious in *Raich*—that "... the discharge of the complainant will be solely for the purpose of meeting the requirements of the act [challenged by the employee]," and that "[i]t is therefore idle to call the injury [to the employee] indirect or remote." *Raich,* 239 U.S. at 39, 36 S.Ct. at 9. Following these cases, we conclude that Chernin's termination, under the circumstances alleged, was sufficiently the result of USDA action to justify a due-process claim.

For the same reasons, the Consent Decision between Federal Beef and the USDA does not extinguish Chernin's right to be heard. It is certainly true that Federal Beef's right to employ Chernin arises from the same relation as Chernin's correlative right to work for Federal Beef. This does not make Federal Beef's waiver of its right to administrative process binding on Chernin. Chernin was not given the opportunity to participate in the negotiations with the USDA, and he did not consent to the settlement agreement. As such, his claims survive the Consent Decision and may be litigated in the proper forum. See *Local 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986).

The USDA advances a slightly different variation of the same theory by arguing that the Consent Decision now stands in its own right as a voluntary agreement, independent of the statutory authority under which the USDA originally acted. Citing *Local 93 v. City of Cleveland, supra,* the USDA contends that, even if Chernin's termination pursuant to the Consent Decision did abridge his rights, his only recourse is a breach-of-contract action against Federal Beef. The USDA misconstrues *City of Cleveland.* When an employer's settlement of a claim through a voluntary consent decree violates the statutory or constitutional rights of nonconsenting employees, those employees remain free to challenge the terms of consent decree on substantive grounds. See *City of Cleveland,* 478 U.S. at 530, 106 S.Ct. at 3080; see also *id.* at 530–31, 106 S.Ct. at 3080–81 (O'Connor, J., concurring). In the event that Chernin wins a hearing, and persuades the agency or reviewing court that the terms of the Consent Decision must be changed or abrogated, the voluntary nature of the consent decree will not preclude its later modification in light of these later circumstances. See *City of Cleveland,* 478 U.S. at 526–27, 106 S.Ct. at 3077–78 (discussing *Railway Employees v. Wright,* 364 U.S. 642, 646–51, 81 S.Ct. 368, 370–73, 5 L.Ed.2d 349 (1961)). We conclude that Chernin has not lost his right to be heard because Federal Beef consented to his firing in order to settle its dispute with the USDA.

## V.

In this case, Chernin does not challenge the constitutionality of the substantive provisions of § 671(a) of the Federal Meat Inspection Act. There is no argument in this case that Congress lacks the power to exclude felons from the meatpacking industry. Congress could have obviated due-process claims like Chernin's had it written § 671(a) as an automatic requirement that the USDA refuse inspection services to every applicant employing any person convicted of a felony. In that case, an employee like Chernin could claim only that the substantive provisions of the Act denied him due process, a claim which, in most contexts, is no claim at all.

This is not the case with § 671(a) as it is written. The statute involves several factual predicates, some of which are at issue

here.[5] Furthermore, the statute requires the USDA to determine, subject to judicial review, whether the circumstances of the employee's criminal record, prior history, and current assignment render the employer unfit to engage in the meatpacking business within the meaning of the statute. This determination is not automatic, nor is it a matter of absolute agency discretion. In such a case, "[t]he point is that, where there is an entitlement, a ... hearing facilitates the consideration of whether a permissible course of action is also an appropriate one." *Loudermill,* 470 U.S. at 543 n. 8, 105 S.Ct. at 1494 n. 8. Chernin suggests a large number of reasons (which we do not evaluate) why his termination pursuant to the Consent Decision is not an appropriate exercise of the USDA's statutory authority. Because his job is at stake, he deserves some opportunity to present these arguments to the agency which may deprive him of his job.

On remand, the District Court should reconsider Chernin's motion for a preliminary injunction, and proceed to determine the validity of Chernin's factual allegations (which we have assumed are true for purposes of this review). In the event that Chernin proves his claim to due process, it will remain for the District Court to decide what process is due, under the standards outlined in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). We express no opinion whether Chernin's claim, if proved, would entitle him to a pre-termination hearing like that accorded in *Loudermill,* 470 U.S. at 542–45, 105 S.Ct. at 1493–95, or simply a post-deprivation hearing, like that approved in *Mallen,* 108 S.Ct. at 1790.[6] Nor do we reach any conclusion regarding the procedural adequacy of whatever administrative hearing may apply to Chernin. We hold,

simply, that Chernin's termination, as alleged, is a deprivation of a right for which the Fifth Amendment guarantees due process of law.[7]

Reversed and remanded for further proceedings consistent with this opinion.

FAGG, Circuit Judge, dissenting.

The Secretary of Agriculture (Secretary) may find a meat-packing business unfit if a person "responsibly connected with the [business] * * * has been convicted * * * of * * * any felony." 21 U.S.C. § 671(a) (Supp. IV 1986). Here, the Secretary found Marshall Chernin's employer, Federal Beef Processors, Inc. (Federal Beef), unfit under section 671(a). In making this determination, the Secretary did not affect due process rights personal to Chernin. Because the court's decision serves only to frustrate the Secretary's efforts to enforce congressional will under section 671(a), I respectfully dissent.

I agree with the court's conclusion the Secretary cannot arbitrarily interfere with Chernin's continuing employment relationship with Federal Beef. The Secretary, however, has not done so. Chernin concedes he is a convicted felon and thus resolves the statutory issue personal to him. As the district court aptly observed, "[t]here is no due process mechanism required to afford fairness to Chernin regarding those convictions."

Two factual issues remain under section 671(a): whether Chernin is "responsibly connected" with Federal Beef; and if so, whether Federal Beef is "unfit to engage in [the meat-packing business]." These issues focus exclusively on Chernin's employer. I therefore disagree with the court's conclusion that because Chernin's job is affected by the Secretary's determination his employer is unfit, Chernin is entitled to

---

5. Chernin argues, for example, that at the time of his termination he was only a consultant, and therefore not "responsibly connected with the business" within the meaning of § 671(a) and (g).

6. Since Chernin has already been terminated, a finding that a pre-termination hearing is necessary would suggest the need for preliminary injunctive relief. Such relief would not be necessary, however, if Chernin's right to due pro-

cess would be adequately met by a post-deprivation hearing.

7. As we noted at the beginning of this opinion, Chernin also claims that the statute itself gives him a right to a hearing. This claim is without merit. It would do violence to the words of the statute to "interpret" the term "applicant" to include Chernin.

510

a due process right to be heard on these factual issues. Instead, I agree with the district court that "Chernin's due process rights end with the determinations [that] are personal to [him]."

Undoubtedly, Chernin's felony convictions involve dishonesty, and their taint impacts adversely on Federal Beef. To prevent an unfitness determination against the employer, however, Federal Beef, not Chernin, must convince the Secretary that a felon's continued service will not hinder the legislative intent: honesty in management and public confidence in the meat-packing industry. Thus, although Chernin's job is necessarily affected, I do not believe Chernin has a constitutionally protected interest in the contest between his employer and the Secretary concerning the ultimate unfitness determination.

Accordingly, I dissent.