Daniel HOLLOWAY, Appellant,

v.

Thomas CONGER, Daniel Lindblom; Thomas Jones; Dorothy Noonan; and Merton Clarkson, as members of the South Dakota State Brand Board and individually; the South Dakota State Brand Board.

South Dakota Stockgrowers Association, Inc., Appellee.

Daniel HOLLOWAY, Appellant,

v.

Thomas CONGER; Daniel Lindblom, Thomas Jones, Dorothy Noonan, and Merton Clarkson, as members of the South Dakota State Brand Board and individually, the South Dakota State Brand Board, Appellees.

South Dakota Stockgrowers Association, Inc.

Nos. 89–5051, 89–5103.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1989.

Decided Feb. 23, 1990.

**1132**

Rodney C. Lefholz, Rapid City, S.D., for appellant.

Harold H. Deering, Jr., Pierre, S.D., for appellee State Brand Bd.

Dennis H. Hill, Rapid City, S.D., for appellee Stockgrowers.

Before BEAM, Circuit Judge, and HEANEY and HENLEY, Senior Circuit Judges.

BEAM, Circuit Judge.

Daniel Holloway brought this 42 U.S.C. § 1983 action against his former employer, the South Dakota Stockgrowers Association, Inc. (Stockgrowers); the South Dakota State Brand Board (Board); and the Board members in their official and individual capacities. Holloway alleged that Stockgrowers wrongfully terminated his employment as chief brand inspector at the demand of the Board, depriving him of a property right in continued employment, without a pretermination hearing. He sought compensatory and punitive dam-

ages. Holloway appeals the orders of the district court [1] granting summary judgment to all defendants. We affirm.

The Board is a South Dakota state agency, composed of five members appointed by the governor. The Board is charged with the administration of state laws relating to livestock marking and branding. By statute, the Board is authorized to designate a private or nonprofit corporation as its agent to conduct a livestock inspection program. S.D. Codified Laws Ann. § 40–18–10 (Supp.1989). The Board designated Stockgrowers as its agent through a contract executed annually by the parties. Stockgrowers derives operating income from inspection fees charged to livestock owners whose animals are inspected.

In July 1983, Stockgrowers employed Holloway as chief brand inspector. There is no evidence in the record that Holloway had an express employment contract with Stockgrowers or that his employment was for a specific term. The Board informed Stockgrowers by letter dated March 3, 1987, that it would not renew the contract with Stockgrowers unless Holloway was replaced as chief brand inspector. Although reasons for the Board's displeasure with Holloway are not entirely clear, the record reflects that the Board received complaints from livestock owners about Holloway and believed him to be "untrainable." The Board voted on March 16 not to renew the contract with Stockgrowers unless Holloway resigned by April 13.

Following a meeting with the Board on April 8, Stockgrowers told Holloway that the Board continued to insist on his resignation and that if he did not resign, he would be unemployed in any event, because the contract would not be renewed. Stockgrowers told Holloway they would not fire him, that they would place him in another capacity, and that they would reinstate him as chief brand inspector when the contract dispute was resolved. By letter to Stockgrowers dated April 9, Holloway resigned his position, effective June 30, under pro-

---

**1.** The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

test, in an effort to facilitate the contract negotiations. On April 23, the Board voted to offer a new contract to Stockgrowers. Stockgrowers accepted Holloway's resignation by letter on May 6 and on June 20, the Board and Stockgrowers executed a new contract. Holloway continued to serve as chief brand inspector beyond his effective resignation date.

On July 8, Stockgrowers wrote to Holloway to express appreciation for his willingness to remain as chief brand inspector. The letter specifically stated his salary and benefits would continue, but the term of his employment would be at the will of Stockgrowers. On September 9, Stockgrowers' Board of Directors, including the five State Brand Board members, met in special session and voted not to retain Holloway as chief brand inspector. On September 23, Stockgrowers informed Holloway that his replacement had been hired and requested that he remain only until October 15 to train the new chief brand inspector. Holloway refused and left the employ of Stockgrowers on September 30.[2]

Holloway filed the instant action on February 11, 1988. He alleged that he had a property right in continued employment that could not be impaired without a pretermination hearing.[3] Stockgrowers moved for summary judgment, arguing that Holloway was an at-will employee under South Dakota law, who had no property right in continued employment. In opposition to the motion, Holloway made two arguments. First, he argued that he was a state employee carrying out a police power through a private agency and was entitled to "the same employee protections as any State employee." Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, Civ. 88–5025, Sept. 27, 1988, at 3. His second argument was that an oral employment contract was formed on April 8

when Stockgrowers promised not to fire him and to reinstate him as chief brand inspector after the contract dispute with the Board was resolved.

The district court granted the motion, finding that Holloway was an at-will employee of Stockgrowers because, under S.D. Codified Laws Ann. § 60–4–4 (1978), his employment was for no specific term. Moreover, the court found that he had no express or implied contract of employment under South Dakota Supreme Court cases creating limited exceptions to the employment-at-will doctrine. Thus, the district court ruled that Holloway had no property right in continued employment.

The Board and its members then moved for summary judgment, arguing that Holloway's suit against the Board was barred by the eleventh amendment; that Holloway's status as an at-will employee of Stockgrowers prevented any recovery against the Board; and that the Board and its members were entitled to qualified immunity. The district court granted the motion, holding that the eleventh amendment barred Holloway's claim against the Board and its members in their official capacities. The district court held that, in any event, its earlier ruling that Holloway was an at-will employee of Stockgrowers foreclosed any recovery against the Board. The court characterized the April 8 agreement as a "conditional promise which never came into effect because the problem with the Brand Board was never resolved." Memorandum Opinion and Order Granting Brand Board's Motion for Summary Judgment, Civ. 88–5025, Jan. 27, 1989, at 6 n. 3. The court also noted Holloway conceded that his action against the Board depended upon a finding that he had a property right in employment and no such right existed. Finally, the district court held that the Board

2. Stockgrowers contested Holloway's attempt to receive unemployment compensation. He ultimately succeeded, however, in *South Dakota Stockgrowers Ass'n, Inc. v. Holloway,* 438 N.W.2d 561 (S.D.1989) (per curiam). The South Dakota Supreme Court upheld administrative and circuit court decisions that Stockgrowers formed a new employment relationship with Holloway by retaining him at-will beyond his

effective resignation date of June 30, and discharged him from employment on September 23.

3. Holloway also alleged impairment of his liberty interest in his good name and reputation and sought damages; however, Holloway does not pursue this claim on appeal.

members were not individually subject to suit because their actions were taken in the proper administration of the brand inspection program, and did not violate the federal Constitution. The court found it unnecessary to rule on the alternative issue of whether the Board members were protected by qualified immunity. This appeal followed.

In reviewing a decision of the district court to grant summary judgment, we must apply the same strict standard as the district court; therefore, our review is de novo. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir.1989). We are required to view all evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleadings. *Id.*

The question whether particular conduct is "state action" for purposes of section 1983 frequently "admits of no easy answer." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–50, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). We have held that services provided by a private entity pursuant to governmental delegation of statutory power is action under color of state law for purposes of section 1983. *See Lawyer v. Kernodle*, 721 F.2d 632, 635 (8th Cir.1983). In this case, there is no dispute that the Board delegated its statutory authority to conduct a brand inspection program to Stockgrowers when the parties executed the annual contract. Thus, Stockgrowers acted "under color of state law" for purposes of this suit.

It is settled law that the fourteenth amendment prohibits state deprivation of an individual's property interest in continued employment without due process of law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Property interests are not created by the Constitution,

but stem from an independent source, such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ South Dakota law provides that employment is at the will of either party if the employment has no specified term. S.D. Codified Laws Ann. § 60–4–4; *Merritt v. Edson Express, Inc.*, 437 N.W.2d 528, 529 (S.D.1989). The South Dakota Supreme Court has created only three exceptions to the employment-at-will doctrine. *See Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983) (wrongful discharge action sustainable where employer fails to follow agreement in its employee handbook to discharge "for cause" only); *Larson v. Kreiser's, Inc.*, 427 N.W.2d 833 (S.D.1988) (employment contract may arise from employer's specific oral promise to hire employee for particular position); *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225 (S.D.1988) (wrongful discharge action sustainable where employer terminates employee in retaliation for refusal to commit criminal or unlawful act).

Holloway renews on appeal the arguments made below that his property interest arises under the *Larson* exception, or from his status as a state employee.[4] We turn first to the argument that Holloway's property interest arises under *Larson*.

Holloway claims an oral employment contract was formed when Stockgrowers promised on April 8 not to fire him, to keep him employed, and to reinstate him as chief brand inspector after the contract dispute was resolved. Holloway argues that this alleged agreement was an oral contract to hire for a particular position, so that, under *Larson*, a property right was created.

We believe, however, that *Larson* is distinguishable from the facts presented here. In that case, the plaintiff, Larson, accepted employment with the family business after

---

4. We do not consider Holloway's arguments that he can show a property interest under the public policy exception to the employment-at-will doctrine enunciated in *Johnson*, 433 N.W.2d at 227 (S.D.1988), or that Stockgrowers breached an implied covenant of good faith and fair dealing. Both arguments were raised for the

first time on appeal, and manifest injustice will not result if we fail to consider them. *See Ryder v. Morris*, 752 F.2d 327, 332 (8th Cir.), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2660, 86 L.Ed.2d 276 (1985). In any event, we find both arguments to be without merit.

his father, the company president, promised him that someday he would be the company president. *Larson*, 427 N.W.2d at 833. In reversing the grant of summary judgment for the defendant company, the South Dakota Supreme Court held only that Larson should be permitted to prove at trial the existence of the oral agreement between Larson and his father. *Id.* at 834. The court clearly stated that the exception it created to its earlier cases upholding the employment-at-will doctrine rested solely on the allegation made by Larson that he had accepted the employment only because of the promise made by the employer that he would be company president. *Id.*

A different situation is presented in this case. Holloway was hired by Stockgrowers to be the chief brand inspector. He held the position continuously at will, never serving in any other capacity with Stockgrowers until he finally left his employment in late September, 1987. Holloway cannot claim, as Larson did, that he accepted employment only because he believed the employer's promise that he would fill a particular position and that the promise was subsequently broken. For this reason, we do not believe *Larson* applies to the extent that it establishes Holloway's property right in continued employment with Stockgrowers.

■ Even assuming the agreement was reached on April 8 as Holloway suggests, we fail to see how the terms of that agreement in any way changed Holloway's status as an at-will employee. There is no indication in the record, and Holloway does not argue, that the parties on April 8 specified a particular term of future employment, as the state statute requires. In fact, Stockgrowers later sent Holloway a letter confirming that his temporary, continued employment as chief brand inspector beyond his effective resignation date was at the will of Stockgrowers. Therefore, we agree with the district court that Holloway was an at-will employee of Stockgrowers.

■ Holloway alternatively argues that his property right is grounded in his status as a tenured state employee entitled to the protections of the South Dakota Career Service Personnel Management System, S.D. Codified Laws Ann. Ch. 3–6A (1985). He cites as support for his position *Peery v. Brakke*, 826 F.2d 740, 744 (8th Cir.1987), in which a panel of this court held that a former employee of the South Dakota Department of Agriculture was denied due process when he was fired without a pretermination hearing. Holloway only briefly argued below that he was a state employee entitled to the "same employee protections" as other state employees.

There is no indication in the record, and no argument has been made, that the State of South Dakota paid Holloway's salary, provided his employee benefits, granted or denied his promotion, or otherwise treated him as a tenured state employee. Furthermore, there is no evidence in the record that Holloway ever attempted to utilize the statutory grievance procedure available to state employees. To the contrary, Holloway stated in his brief to this court that he was "hired by the Stockgrowers"; that Stockgrowers is a "private corporation"; that "after being fired by the Stockgrowers [he] applied for unemployment compensation"; and that "[t]he Stockgrowers contested [his] receipt of unemployment compensation benefits." Appellant's Brief at 1–4.

We believe Holloway's own characterization of his employment status belies his claim that he was a state employee. We also find *Peery* to be distinguishable because the plaintiff in that case was directly employed by the South Dakota Department of Agriculture and was fired by an administrator of the Department. *Peery*, 826 F.2d at 742. Furthermore, our holding that Holloway was an at-will employee of Stockgrowers precludes the inconsistent conclusion that Holloway was a state employee entitled to the protections of S.D. Codified Laws Ann. Ch. 3–6A. The district court correctly granted summary judgment for Stockgrowers on the ground that Holloway was an at-will employee with no property right in continued employment.

We next consider whether the district court properly granted summary judgment in favor of the Board and its members.

After the parties filed their briefs on appeal, a divided panel of this court held in *Chernin v. Lyng,* 874 F.2d 501, 506 (8th Cir.1989), that employees and employers have an interest in their employment relations protected by the fifth amendment from arbitrary government interference, even if the employment relationship may be dissolved at will.[5] The panel reasoned that a constitutional cause of action arises if the government unlawfully interferes with the employment relation without providing due process, because the common law protects employees at-will from outside interference in their employment. *Id.* at 505. In analyzing Chernin's due process claim, the panel concluded that it was unnecessary to determine whether Chernin had "an entitlement to future employment enforceable against [his] employer." *Id.* at 506. *But see Merritt v. Mackey,* 827 F.2d 1368, 1371 (9th Cir.1987) (finding of unconstitutional government interference in employment relationship dependent upon employee's enforceable entitlement to continued employment).

Even when a panel disagrees with a result reached in another opinion, it is bound by a prior Eighth Circuit decision, *Yates v. United States,* 753 F.2d 70, 71 (8th Cir.) (per curiam), *cert. denied,* 471 U.S. 1022, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985); therefore, we requested the benefit of postargument briefing by the parties as to the effect of *Chernin* on this case.[6]

■■■ We conclude that the district court properly granted summary judgment for the Board and its members in their official capacities, despite the advent of *Chernin.* The eleventh amendment bars suits by plaintiffs against state agencies when the state has not consented to be sued. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Furthermore, the eleventh amendment bars claims for damages against a state official acting in an official capacity, even if the official's conduct was illegal under federal law. *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986). Holloway sought only compensatory and punitive damages. Therefore, his suit against the Board and its members in an official capacity is barred by the eleventh amendment and the district court properly granted summary judgment on that ground.

Our final consideration, then, is whether *Chernin* requires us to reverse this case for further proceedings against the Board members in their individual capacities. A plaintiff may state a claim under section 1983 against an official personally if the official, acting under color of state law, caused the deprivation of a federal right. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Nix v. Norman,* 879 F.2d 429, 431 (8th Cir.1989). *Chernin* calls into doubt the district court's holding that the actions of the Board members did not violate the federal constitution.

■■■ A government official, however, is entitled to qualified immunity when sued personally, unless he has violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To be "clearly established," the "contours of the right must be

---

5. The United States Department of Agriculture (USDA) decided that Chernin's status as an ex-felon rendered the company he served as president, Federal Beef Processors, Inc., unfit to engage in the meatpacking business. *Chernin,* 874 F.2d at 502. Acting under 21 U.S.C. § 671(a), the USDA refused to provide meat inspection services Federal Beef needed to operate until Chernin was removed from employment. *Id.* Bowing to severe economic pressure, Federal Beef settled its dispute with the USDA by agreeing in a Consent Decision that Federal Beef would permanently divest Chernin of any connection to its operations and deny him access to its plant within nine months after the commencement of inspection services. *Id.* at 503. Chernin challenged the enforcement of the Consent Decision on constitutional and statutory grounds and the district court granted summary judgment for the USDA. *Id.* at 503. On appeal, the panel reversed. It should be noted that Chernin did not sue officials of the USDA in their personal capacities.

6. We agree with Stockgrowers that *Chernin* does not affect our analysis in which we concluded that Holloway was an at-will employee of Stockgrowers.

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity provides officials sued in their individual capacities with an immunity from suit, rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

The issue of qualified immunity was raised below, but the district court did not address it in light of its other rulings. Where the record on appeal is sufficiently clear, remand is not required for the resolution of issues not addressed by the district court. *Harris v. Brewer*, 434 F.2d 166, 169 (8th Cir.1970). Therefore, on the basis of the record before us, we conclude, as a matter of law, that the Board members are entitled to qualified immunity. Any constitutional cause of action Holloway may now have under *Chernin* was not "clearly established" at the time the Board members acted, and the officials thus could not have reasonably known that their actions violated Holloway's right.

Accordingly, we affirm the district court.

HEANEY, Senior Circuit Judge, concurring and dissenting.

Under South Dakota law, Stockgrowers' oral promises to Holloway may have created an employment contract. I would reverse the summary judgment in favor of Stockgrowers.[1]

Holloway alleges that he resigned his position as Chief Brand Inspector in conjunction with Stockgrowers' promise that he would be given the position back shortly thereafter. Plaintiff's Statement of Material Facts, paragraph 1, (November 30, 1988); Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 3 (September 27, 1988);[2] Complaint paragraph XV (February 11, 1988). The majority rejects this allegation as insufficient if true to create a property right under South Dakota law.[3] I disagree.

The South Dakota Supreme Court held in *Larson v. Kreiser's, Inc.*, 427 N.W.2d 833 (S.D.1988), that an employer's oral promise of a particular employment position can create an employment contract in which the employee has an expectation interest. *Id.* at 834. The majority would limit *Larson* to cases where an employee accepted employment with the company only because of the employer's promise of a specific position. Moreover, they note that the alleged oral promise in this case did not specify a fixed term of employment as required by statute, and that a subsequent letter from Stockgrowers insisted that Holloway was still an at-will employee. *Ante* at 1134–35.

Summary judgment was granted in this case, not because Holloway has not stated a claim or because there is no factual dispute, but because Holloway's attorney failed to comply with a local rule requiring the separate listing of facts in dispute. Instead, the attorney submitted a three page fact summary. I refuse to disregard the factual dispute clearly set forth in Holloway's submissions to the court because Local Rule 4 does not give the district courts of South Dakota discretion to modify application of the rule when the equities of a particular case so demand. *See Hall v. Commissioner of Internal Revenue*, 805 F.2d 1511, 1514–15 (11th Cir.1986) (inconsistent with the policies of the federal rules).

1. I agree with other portions of the majority opinion: that Stockgrowers' conduct qualifies as state action; that Holloway was terminated; that Holloway is not entitled to official state termination procedures; that *Chernin* correctly states the law of the circuit; that the eleventh amendment bars an award of damages against members of the Brand Board in their official capacities; and that the members of the Brand Board in their individual capacities are entitled to qualified immunity against a *Chernin* claim.

2. The district court refused to consider Holloway's statement of facts in the September Memorandum because local rules require without exception that facts in dispute be listed separately. Rules of Practice of the United States District Court of the District of South Dakota, Rule 4 § 8(D) (1984). Pursuant to Rule 4, the district court deemed all of Stockgrowers' factual allegations admitted, and held that there was no factual dispute. Memorandum Opinion and Order Granting Summary Judgment at 4 (October 28, 1988).

3. Whether or not this was a conditional promise is a matter for the jury. *Collins v. South Dakota State Board of Transp.*, 264 N.W.2d 491, 495–96 (S.D.1978).

*Larson* created an exception to S.D.Codified Laws Ann. § 60–4–4 (1978), which provides that employment without a specified term is employment at will. The exception was necessary for Larson to prevail, because there was "no indication in the record that plaintiff was employed for a specified term." *Larson,* 427 N.W.2d at 833. Thus, it does not matter that Holloway has not alleged that Stockgrowers promised to employ him for a fixed period of time. The only issue is whether Holloway's allegations state a cause of action under *Larson.*[4]

While Larson accepted a job only because he was promised the presidency of the company one day, the *Larson* exception to at-will employment is not limited to identical fact situations. *Larson* relied principally on two other cases for its analysis, one of which was *Sea–Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982). In *Sea–Land,* the plaintiff resigned a position in reliance on her employers' promise to hire her for a new position. *Id.* 297 S.E.2d at 648–49. The court held that a cause of action existed. "We fail to see, however, why a contract to exchange jobs should not be considered a contract of employment...." *Id.* at 650. Apparently, Holloway was an at-will employee at the time the dispute with the State Brand Board arose. Stockgrowers could have fired him outright at that time, but they chose not to do so. Instead, perhaps because his expertise was valuable to Stockgrowers, Holloway alleges that Stockgrowers promised him that he would be returned to his previous position if he stayed. In this respect, this case is indistinguishable from *Sea–Land.*

> [A]lthough Sea–Land may have had the right to terminate O'Neal's employment at will either while she was still a sales representative or in the event she became a teletype operator/messenger, the company did not dismiss her this way. Instead, it promised her that, if she resigned from the one position, she would be employed in the other. This was an

undertaking separate and apart from any contract covering the particular position involved and was not subject to any presumption of terminability at will that might have applied to such a contract. *Id.* I believe it likely that South Dakota would recognize an agreement to change positions at the same business as an employment contract.

Accordingly, I would reverse the grant of summary judgment in favor of Stockgrowers. Stockgrowers' promises may have given Holloway a property interest in continued employment.

---

**4.** Whether the subsequent Stockgrowers' letter recited or attempted to alter the terms of the agreement should be left to the jury.