Anthony J. PRISCO Jr., Individually and Anthony J. Prisco, Jr. as parent and natural guardian of Lauren Prisco, A Minor, Appellees,

v.

UNITED STATES of America, DEPART-MENT OF JUSTICE, former U.S. Attorney General William French Smith, in his capacity as Attorney General and individually, Attorney General Edwin Meese, in his capacity as Attorney General and individually, United States Marshal Service, Stanley Morris, in his capacity as United States Marshal Service Director and individually, Unknown Agents of the United States Marshal Service and Michael Morris, Appellants.

No. 87-1708.

United States Court of Appeals, Third Circuit.

Argued May 5, 1988.

Decided July 1, 1988.

Opinion on Denial of Rehearing and Rehearing En Banc Aug. 24, 1988.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Edward T. Ellis, Asst. U.S. Atty. (argued), Deputy Chief, Civil Div., Lois W. Davis, Asst. U.S. Atty., Philadelphia, Pa., for appellants.

Conrad J. Benedetto (argued), Philadelphia, Pa., for appellees.

Before: GIBBONS, Chief Judge, MANSMANN and COWEN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

This is an appeal pursuant to 28 U.S.C. § 1291 (1982) by Edwin Meese, Attorney

General, William French Smith, former Attorney General, and Stanley Morris, Director of the United States Marshals Service, from an order denying their motion for summary judgment. The suit is by Anthony J. Prisco, Jr., the father of Lauren Prisco, a minor. It seeks declaratory and injunctive relief, and money damages, against Meese, Smith, and Morris, and against other defendants including the United States. The action arises from the placement and maintenance of Lauren in the Federal Witness Protection Program, along with her mother and stepfather, without notice to Prisco.

The United States moved for summary judgment on Prisco's Federal Tort Claims Act claim on the ground that he had not filed an administrative claim. That motion was denied, and the order is not presently appealable. Prisco's claim for injunctive relief has not been ruled upon. Thus there is no order appealable under 28 U.S.C. § 1292(a) (1982). No order has been certified for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (Supp. III 1985). Meese, Smith and Morris moved for summary judgment on two grounds: 1) qualified official immunity, and 2) failure to allege acts by them which violated Prisco's rights. They contend that because the district court rejected their qualified immunity defense they may appeal at this time because the order appealed from is collaterally final. They contend, as well, that the court erred in failing to dismiss on qualified immunity grounds.

We conclude that the appeals of Meese and Morris should be dismissed, and that the order denying Smith's motion, while appealable, should be affirmed.

I

Anthony Prisco married Maria Prisco in 1977. On February 14, 1980 they had a daughter, Lauren. Shortly after Lauren's birth the Priscos separated and on March 18, 1983 they were divorced. In December of 1982 they had entered into an agreement granting custody of Lauren to Maria and reasonable visitation rights to Anthony. Both before and after the divorce Anthony exercised those visitation rights regularly.

On August 7, 1983 Maria married Michael Morris. This stepfather of Lauren had been cooperating, prior to the marriage, with a Federal Bureau of Investigation inquiry into an organized crime group involved in the drug trade. The investigation resulted, on September 19, 1983, in a federal grand jury indictment of fourteen members of the group. Prior to the return of the indictment the Federal Bureau of Investigation removed Michael Morris, Maria and Lauren from the Philadelphia area to a secure location. Anthony Prisco was not informed of the move. In October the Morrises were admitted to the Federal Witness Protection Program authorized by 18 U.S.C. §§ 3521–28 (Supp. IV 1986). The United States Marshals Service moved them to a new home and gave them new identities.

Prisco was not informed that Lauren was in the Witness Protection Program. He retained a lawyer and a private investigator in an effort to locate his daughter. On December 5, 1983 the efforts of the investigator resulted in the disclosure by Michael Morris that Prisco's daughter was with the Morrises in the Witness Protection Program. Anthony Prisco then filed a petition in the Court of Common Pleas of Philadelphia County seeking full custody of Lauren. The Marshals Service made Michael Morris, Maria, Lauren, and various federal employee witnesses available for hearings in the Court of Common Pleas, and permitted a court social worker to make a home visitation in the secret relocation area. The Marshals Service also offered to permit Anthony Prisco to make visits with his daughter at government expense at a neutral site selected and secured by it. Prisco participated in two such visits, but alleges that they were of poor quality from the standpoint of a parent, because of the distance traveled, the tight security, and the limits on what he and Lauren could discuss.

The Court of Common Pleas on June 29, 1987 awarded primary custody to Anthony Prisco. On October 2, 1987 the Superior Court of Pennsylvania vacated that order and remanded for further proceedings. At that point Anthony and Maria agreed to share primary custody, and an order was entered to that effect by the Court of Common Pleas on October 16, 1987.

Meanwhile, on November 21, 1985 Anthony Prisco had filed the instant action in the

United States District Court, alleging that the action of the defendants in placing Lauren in the Witness Protection Program without notice to him violated rights secured by Pennsylvania law and by the due process clause of the fifth amendment. The United States Attorney, appearing for the United States and the federal officer defendants, moved for summary judgment on July 24, 1986. The court granted an extension of Anthony Prisco's time to respond to that motion, and on October 15, 1987 denied it. As noted above, the motion was predicated both on the adequacy of the factual allegations, and on the defense of qualified official immunity.

## II

The order denying a motion for summary judgment is interlocutory, and thus not ordinarily appealable on the authority of 28 U.S.C. § 1291. The United States Attorney concedes, therefore, that the United States may not appeal at this time. It is contended, however, that Edwin Meese, William French Smith, and Stanley Morris may appeal at this time from the order denying their summary judgment motion because it rejects their claim for qualified official immunity. They rely on *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) for the proposition that a denial of a motion for summary judgment on official immunity grounds falls within the exception to the final judgment rule for orders that are collaterally final.

■ The issue of appealability is more complex than the appellants recognize, however, because in this case Prisco's complaint seeks both prospective (injunctive and declaratory) and retrospective (money damages) relief. The defense of qualified official immunity, like the defense of absolute judicial or official immunity, is inappli-

cable to claims for prospective relief. Neither immunity defense has ever, either in the Supreme Court or in this Court, been held to apply to such a claim.[1] The controlling precedents are *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 584, 72 S.Ct. 863, 865, 72 L.Ed. 1153 (1952) (affirming preliminary injunction against cabinet official) and *Ex parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908) (injunction against enforcement of unconstitutional act by state official). As the Supreme Court explained in *Harlow v. Fitzgerald:*

> [O]ur decisions consistently have held that government officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability.

457 U.S. at 806, 102 S.Ct. at 2732. Thus the policy rationale for qualified immunity is that we do not want officials to make discretionary decisions with one wary eye on their pocketbook. *See Hicks v. Feeney,* 770 F.2d 375, 379 (3d Cir.1985) ("Qualified immunity from suits for civil damages brought under § 1983 is a common law immunity that balances the need to compensate and to vindicate the rights of victims of constitutional torts with a concern that too broad a liability may cause public officials to refrain unnecessarily from discretionary decisions."). That policy rationale is not applicable to a suit for injunctive relief. An official acting in violation of the law may in some instances be appropriately shielded from the threat of money damages recovery, but the policy reasons for such a shield do not confer discretion to continue acting illegally. Extending immunity so as to confer a freedom from civil process seeking prospective relief would have that effect.

The paradigm example in this respect is the earliest of the immunity doctrines, judi-

---

1. Qualified immunity has uniformly been applied in cases seeking money damages, not prospective relief. *See, e.g., Anderson v. Creighton,* — U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (qualified immunity shields officials from "civil damages liability"); *Mitchell v. Forsyth,* 472 U.S. 511, 513, 105 S.Ct. 2806, 2808, 86 L.Ed.2d 411 (1985) (suit for damages); *Harlow v. Fitzgerald,* 457 U.S. 800, 802, 102 S.Ct. 2727, 2729, 73 L.Ed.2d 396 (1982) (same); *Hynson By*

and *Through Hynson v. City of Chester,* 827 F.2d 932, 934–35 (3d Cir.1987) (same), *cert. denied,* — U.S. ——, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988); *Bennis v. Gable,* 823 F.2d 723, 732 (3d Cir.1987) (same); *Sourbeer v. Robinson,* 791 F.2d 1094, 1103 (3d Cir.1986) (same), *cert. denied,* — U.S. ——, 107 S.Ct. 3276, 97 L.Ed.2d 779 (1987); *People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 143 (3d Cir.1984) (same).

cial immunity. That doctrine originated in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 357, 20 L.Ed. 646 (1871), which held that a judge was absolutely immune from a suit for money damages brought by a disbarred attorney. At the same time, however, the Supreme Court ordered that a peremptory writ of mandamus must issue against the judges of the Supreme Court of the District of Columbia to restore the same attorney to the roll. *Ex parte Bradley*, 74 U.S. (7 Wall.) 364, 379, 19 L.Ed. 214 (1868). The long settled law with respect to the distinction, for immunity purposes, between suits for money damages and suits for prospective relief is set forth in detail in *Conover v. Montemuro*, 477 F.2d 1073, 1094–1104 (3d Cir.1973) (Gibbons, J., concurring in denial of rehearing). It need not be repeated here.

 It is clear, therefore, that a suit seeking both prospective relief and money damages will not end for a party successfully asserting a defense of either absolute or qualified immunity. That being the case, it is necessary to consider the rationale for the *Mitchell v. Forsyth—Harlow v. Fitzgerald* exception to the final judgment rule. That rationale is that the *collateral* interest being protected is the freedom from having to defend a lawsuit; this interest, like a claim of double jeopardy, is lost beyond recall even if the defendant prevails at trial. As the *Mitchell* Court explains:

> *Harlow* ... recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute immunity indicates to us that the denial of qualified immunity should be similarly appealable: in each case, the district court's decision is effec-

tively unreviewable on appeal from a final judgment.

472 U.S. at 526–27, 105 S.Ct. at 2815–16 (emphasis in original); *see also Chinchello v. Fenton*, 805 F.2d 126, 130 (3d Cir.1986). That rationale has only the slightest application to a case involving claims for both prospective relief and money damages. The part of the case that will determine liability must go forward in any event. The marginal benefit to a governmental official from an interlocutory review of a ruling that proof of damages should not be heard is so slight that it cannot outweigh the systemic harms from permitting piecemeal interlocutory review of discrete issues in a case which, even against that official, will be ongoing. We hold, therefore, that in an action in which claims for prospective relief remain pending, a party against whom they remain pending may not appeal from the denial of a motion for summary judgment on immunity grounds.[2] This holding applies to the appeals of Edwin Meese and Stanley Morris, because Anthony Prisco's claims for prospective relief have not yet been ruled upon.

### III

 William French Smith, however, is in a different position. Smith is no longer a government official, and we have examined the complaint carefully to determine whether any of its allegations would permit proof of facts warranting any prospective relief against him. There are no such allegations. He is a defendant only for the purpose of obtaining money damages from him. Thus he may appeal from the denial of his motion for summary judgment on qualified immunity grounds, and we must address the merits of that order.

 Smith contends that while Prisco may have a right to a due process hearing before his parental rights are terminated, that right was not clearly established at the time he and the other federal defendants placed Lauren in the Witness Protection Program. High government officials "generally are shielded from liability for civil damages insofar as their conduct does

---

**2.** In *Kovats v. Rutgers, The State University*, 822 F.2d 1303, 1306 (3d Cir.1987) this Court considered an immunity question in an interlocutory appeal although claims for injunctive relief remained. The district court, however, had certified its order pursuant to 28 U.S.C. § 1292(b). There is no such certification in this case.

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In exploring whether a right is clearly established, we must find "some but not precise correspondence" with applicable precedents. *People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144 (3d Cir.1984). "Although officials need not 'predic[t] the future course of constitutional law,' ... they are required to relate established law to analogous factual settings." *Id.* (citation omitted).

The question in this case is whether a father has a right to notice and an opportunity to be heard before his daughter is placed in the Witness Protection Program. In a long line of cases extending over sixty-five years, the Supreme Court has held that the parent-child relationship is protected as a matter of substantive due process. *E.g., Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978); *Moore v. City of East Cleveland,* 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977); *Stanley v. Illinois,* 405 U.S. 645, 651–52, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944); *Meyer v. Nebraska,* 262 U.S. 390, 399–400, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923). In *Santosky* the Court noted that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." 455 U.S. at 753, 102 S.Ct. at 1394–95. That substantive liberty interest was so significant that it could be terminated only on a clear and convincing rather than a fair preponderance standard of proof. *Id.* at 768–69, 102 S.Ct. at 1402–03. In *Quilloin* the Court emphasized that a divorced father such as Prisco had a significant due process interest, greater than that of a father of an illegitimate child, because "le-

gal custody of children is, of course, a central aspect of the marital relationship, and even a father whose marriage has broken apart will have borne full responsibility for the rearing of his children during the period of the marriage." 434 U.S. at 256, 98 S.Ct. at 555. In *Stanley* the court held that even the father of an illegitimate child, with whom he had a custodial relationship, had a substantive due process interest which could not be terminated without a hearing. 450 U.S. at 657–58, 92 S.Ct. at 1215–16. In light of these authorities, it cannot be seriously suggested that Prisco's substantive interest and procedural entitlement to notice and hearing were doubtful in August of 1983 when Lauren was removed from Philadelphia, and in October of 1983 when she was placed in the Witness Protection Program. What remains for consideration is whether the law was in doubt as applied to those officials who caused her removal.

At the time Lauren was removed from Philadelphia several cases had already addressed the issue presented by such an action. In *Ruffalo v. Civiletti,* 702 F.2d 710 (8th Cir.1983), decided on March 17, 1983 and rehearing and rehearing in banc denied on June 8, 1983, the facts were similar to those in the instant case, except that a father and son were placed in the Witness Protection Program without notice to the mother. The court held that her constitutional rights had been violated. *Id.* at 715. In *Franz v. United States,* 707 F.2d 582 (D.C.Cir.1983), decided on May 10, 1983, the court held that a non-custodial parent has a constitutional right to notice and an opportunity to be heard when his child is placed in the Witness Protection Program. *Id.* at 608. Neither case determined precisely what procedural requirements would suffice, since in both cases, as in Prisco's case, no procedure, either pre- or post-removal, was afforded. Thus at the time of Lauren's removal, two cases respecting the precise rights now claimed to be unclear had already been decided adversely to those responsible for the operation of the Witness Protection Program.

In support of the contention that Prisco's constitutional rights were unclear in August of 1983, Smith relies on *Leonhard v. Mitchell,* 473 F.2d 709 (2d Cir.) (*Leonhard I*), *cert. denied,* 412 U.S. 949, 93 S.Ct.

3011, 37 L.Ed.2d 1002 (1973), and *Leonhard v. United States*, 633 F.2d 599 (2d Cir.1980) (*Leonhard II*). Those cases are not sufficient to support a summary judgment on official immunity grounds. *Leonhard I*, which was decided before the Supreme Court's decision in *Santosky*, involved an action by a father seeking a writ of mandamus to the official in charge of the Witness Protection Program to compel disclosure of the location of the children. The appellate court's affirmance was on the ground that there was no basis for mandamus relief. 473 F.2d at 713–14. Dicta to the effect that there is no "clear constitutional right to custody or visitation rights," *id.* at 713, is not only unpersuasive, but plainly inconsistent with *Santosky*. In *Leonhard II* the father's damage claim was held to be time barred, and the children were held to lack standing to complain of an abridgement of his rights. 633 F.2d at 618. Thus the court expressed no view as to the father's rights. By the time Lauren was removed from Philadelphia, *Santosky*, *Quilloin*, *Ruffalo* and *Franz* had been decided. In light of those decisions, Smith's contention that Prisco's rights to some form of notice was not clearly established in August or October of 1983 is totally unpersuasive. Thus we hold that the district court did not err in denying Smith's motion for summary judgment on the defense of qualified official immunity.

## IV

The appeal of Edwin Meese and Stanley Morris will be dismissed. The order denying the motion for summary judgment of William French Smith on the ground of qualified official immunity will be affirmed. Although the United States Attorney has addressed other issues, including the legal sufficiency of the pleadings, no other issues may properly be considered in this appeal.

SUR PETITION FOR REHEARING

Present: GIBBONS, *Chief Judge,* SEITZ, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, AND COWEN, *Circuit Judges.*

The petition for rehearing filed by appellant in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judge Seitz would grant rehearing in banc because of the appealability issue. He realizes that the evolving state of the law with respect to the parameters of *Mitchell v. Forsyth*, 472 U.S. 511 (1985), can only be finally settled by the Supreme Court. Nevertheless, he believes the particular issue here fully satisfies the criteria for rehearing in banc. Judges Becker, Stapleton, Greenberg and Hutchinson would also grant rehearing.