Herman Louis DiMARTINI,
Plaintiff/Appellee,

v.

Lynn Jay FERRIN, Special Agent,
Federal Bureau of Investigation,
Defendant/Appellant.

No. 88–1771.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 15, 1989.

Decided Nov. 21, 1989.

Deborah Ruth Kant, Dept. of Justice, Washington, D.C., for defendant/appellant.

Lawrence J. Semenza, Reno, Nev., for plaintiff/appellee.

Before GOODWIN, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.

GOODWIN, Chief Judge:

This interlocutory appeal arises out of a suit by Di Martini seeking damages and injunctive relief from FBI Special Agent Ferrin. Di Martini sued Ferrin in his individual capacity under the cause of action recognized in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Nar-* *cotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Ferrin moved for summary judgment on the ground that he was entitled to qualified immunity. The district court denied the motion and Ferrin appeals.

We must consider first whether an order denying summary judgment based on qualified immunity is immediately appealable when the plaintiff seeks injunctive relief as well as money damages. We will consider whether it was error to deny Ferrin's motion for summary judgment if we have jurisdiction to consider the merits.

In the course of an FBI investigation of organized crime in Las Vegas casinos, Special Agent Ferrin interviewed Di Martini, an employee at the Stardust Hotel and Casino, concerning his knowledge of illegal activities at the Stardust. Di Martini denied such knowledge. After various employees of the Stardust were indicted, Agent Ferrin again contacted Di Martini, who was then working at the Sands Hotel, to request his assistance in the upcoming criminal trial. Di Martini reiterated that he had no knowledge that those named in the indictments were engaged in criminal activity. Thereafter, the Sands Hotel dismissed Di Martini from his position.

Di Martini then commenced this *Bivens* action seeking equitable relief and damages from Ferrin. He alleged that Ferrin attempted to harass and intimidate him into cooperating in a criminal investigation. He also alleged that out of malice and in order to retaliate for Di Martini's refusal to cooperate, Ferrin caused Di Martini to be discharged from his employment at two casinos, damaged his name and reputation, and thereby prevented him from securing other employment. Accordingly, Di Martini alleged that Ferrin violated his free speech and association rights, his privacy rights under the ninth and tenth amendments, his equal protection rights, and his fifth amendment due process rights.

Ruling on a motion to dismiss, the district court rejected as frivolous all but the fifth amendment claim. Di Martini does not appeal this ruling. The district court found that the facts as alleged could give rise to a fifth amendment violation.

Before discovery took place on the fifth amendment claim, Ferrin moved for summary judgment on the basis of qualified immunity, arguing that his actions, even as alleged, did not violate clearly established fifth amendment rights. Ferrin also filed a motion for a protective order staying all discovery pending the court's ruling on the qualified immunity issue. The district court granted the protective order, Order, CV–S–85–001–LDG (July 30, 1987), and subsequently denied the motion for summary judgment. Ferrin filed a timely appeal.

## I. JURISDICTION

As a threshold matter, we must decide whether we have jurisdiction to hear this appeal. A district court's order denying a motion for summary judgment ordinarily is not reviewable. *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir.1989). The Supreme Court has held, however, that an order denying qualified immunity in a section 1983 action for money damages is immediately appealable under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). The question whether such denials are appealable when a claim for equitable relief is also pending in the trial court, however, remains open in this circuit and divides others.

▉ We hold with the majority of courts, that the collateral order doctrine entitles officials to interlocutory review of denials of immunity, even though claims for equitable relief are joined with damage claims. *See De Vargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 717–20 (10th Cir.1988); *Young v. Lynch*, 846 F.2d 960, 961 (4th Cir.1988); *Drake v. Scott*, 812 F.2d 395, 398 (8th Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Scott v. Lacy*, 811 F.2d 1153, 1153–54 (7th Cir.1987); *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1190 (1st Cir.1986); *Kennedy v. City of Cleveland*, 797 F.2d 297, 305–06 (6th Cir.), *cert. denied*, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *Tubbesing v. Arnold*, 742 F.2d 401,

404 (8th Cir.1984); *see also Musso v. Hourigan*, 836 F.2d 736, 742 n. 1 (2d Cir.1988) (appellate jurisdiction proper over fourth amendment immunity claim though other damages claim pending). *Contra Prisco v. United States, Department of Justice*, 851 F.2d 93, 95–96 (3rd Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989); *Riley v. Wainwright*, 810 F.2d 1006, 1007 (11th Cir.1987) (per curiam) (presence of claim for injunctive relief alternative ground for denying appeal); *but see Marx v. Gumbinner*, 855 F.2d 783, 787–88 (11th Cir.1988) (siding with the majority view; no attempt to distinguish *Riley*); *Bever v. Gilbertson*, 724 F.2d 1083, 1088 (4th Cir.) *cert. denied*, 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984).

Under the collateral order doctrine, an interlocutory order is appealable if it is effectively unreviewable on appeal from final judgment, conclusively determines the disputed question, and resolves an important issue separable from the merits of the action. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978). Applying this test, the Supreme Court reasoned in *Mitchell* that the denial of a claim for absolute immunity is appealable immediately because the essence of the claim is "its possessor's entitlement not to have to answer for his conduct in a civil damages action." 472 U.S. at 525, 105 S.Ct. at 2815. The Court concluded that qualified immunity is also an entitlement not to be sued, an entitlement which would be lost if the case erroneously went to trial. Thus, such a claim would be effectively unreviewable at a later stage of the litigation. *Id.* at 525–27, 105 S.Ct. at 2815–16. Turning to the remaining two requirements under the collateral order doctrine, the Court concluded that denials of qualified immunity would determine conclusively the disputed question and could be considered separable from, and collateral to, the rights asserted in the action. *Id.* at 527–29, 105 S.Ct. at 2816–17. In a footnote, however, the Court expressly reserved the question whether orders denying qualified immunity in cases seeking both damages and equitable relief similarly could be appealed at the interlocu-

tory stage. *Id.* at 519 n. 5, 105 S.Ct. at 2812 n. 5.

The Third Circuit has answered this question in the negative, holding that the inclusion of a claim for equitable relief defeats the immediate appealability of a denial for qualified immunity. *Prisco*, 851 F.2d at 96. The court reasoned that the rationale favoring immediate review of denials of qualified immunity "has only the slightest application to a case involving claims for both prospective relief and money damages." *Id.* at 96. "That rationale is that the *collateral* interest being protected is the freedom from having to defend a lawsuit; this interest ... is lost beyond recall even if the [government official] prevails at trial." *Id.* (emphasis in original). Because the defense of qualified immunity is inapplicable to claims for prospective relief, a suit seeking both prospective relief and money damages does not end for the official who successfully asserts a defense of immunity. *Id.*

We do not consider the benefit to an official from interlocutory review in these cases to be marginal, however. Rather, we agree with the view of the majority of the circuits that "there are considerable differences in both time and expense in defending a case that involves both damages and equitable relief as contrasted to a case that involves equitable relief alone." *Young*, 846 F.2d at 962. In fact, the Seventh Circuit has noted that "[a]s a practical matter, a public official who is a defendant in a suit seeking an injunction is not 'on trial' at all. The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body. If he leaves office during the interim, he leaves the case behind and his successor becomes the party." *Scott*, 811 F.2d at 1153–54.

Moreover, the collateral order doctrine itself entitles officials to interlocutory review of denials of immunity, even though claims for equitable relief are involved. First, a denial of qualified immunity in a case combining legal and equitable claims is as unreviewable at a later stage as is a denial of qualified immunity involving only legal claims. The *Mitchell* Court determined that the essence of the immunity is the right to avoid trial. Likewise, as the Seventh Circuit noted, a public official who is a defendant in a suit seeking an injunction is not really on trial at all, and the "declaration that the official is immune from damages ends the case for that official personally, even though it may not end the case for the body he represents." *Scott*, 811 F.2d at 1153. Thus, the fact that a suit includes equitable claims does not make the immunity decision any less "effectively unreviewable" than a suit involving only legal claims.

Denying the official interlocutory review denies him or her the right to avoid trial, and prolongs the pressures of having his or her personal finances at risk. *See Prisco*, 851 F.2d at 95 ("the policy rationale for qualified immunity is that we do not want officials to make discretionary decisions with one wary eye on their pocketbook"). Because the issue of immunity is irrelevant to a district court's consideration of equitable claims, the inclusion of such claims should not affect the extent to which the immunity determination is either conclusive or collateral.

## II. QUALIFIED IMMUNITY

Ferrin contends that as an FBI agent he is entitled to qualified immunity against Di Martini's allegation. Government officials performing discretionary functions enjoy qualified immunity from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Immunity attaches if the official's conduct is objectively reasonable "as measured by reference to clearly established law." *Id.; see also Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 *reh'g denied*, 468 U.S. 1226, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984). Ferrin is entitled to summary judgment based on qualified immunity only if, viewing the facts in the light most favorable to Di Martini, the facts as alleged do not support a claim that

Ferrin violated clearly established law. *Mitchell*, 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9. This is a purely legal question which this court reviews *de novo*. *Id.* at 528, 105 S.Ct. at 2816–17; *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir.1989); *Vaughan v. Ricketts*, 859 F.2d 736, 739 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

## A. DI MARTINI'S ALLEGATIONS

Di Martini alleged that through threats, harassment and intimidation, Agent Ferrin (1) attempted to coerce Di Martini into cooperating in an investigation and committing perjury; (2) caused Di Martini's employer to fire Di Martini; and (3) caused the loss of Di Martini's good name and reputation and thereby interfered with Di Martini's future employment possibilities. He claims that these actions deprived him of his due process rights.

Ferrin, on the other hand, claims that Di Martini has failed to come forward with specific facts showing that there was a genuine issue for trial. Ferrin correctly notes that in the face of a well-supported motion for summary judgment, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e) (1989); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. General allegations or denials in the complaint or pleadings are not sufficient to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also White By White v. Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986) ("Even in the absence of opposing affidavits, summary judgment [based on qualified immunity] is inappropriate where the movant's papers are insufficient on their face.").

In this case, however, the district court stayed all discovery in the proceedings pending its ruling on Ferrin's motion for summary judgment based on qualified immunity. The Supreme Court has held that until the threshold issue of immunity is resolved, discovery should not proceed. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *cf. Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987) (denial of discovery is appropriate on qualified immunity issue where actions alleged by plaintiff are such that a reasonable officer could have believed they were lawful). In reviewing a district court's denial of summary judgment advanced on grounds of qualified immunity we must accept as true the facts stated in the affidavits. *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1211 (9th Cir. 1988) (circuit recognizes that the Supreme Court has limited scope of interlocutory appellate review of immunity claim to a purely legal question; the correctness of the plaintiff's version of the facts is not considered). If the facts as alleged by Di Martini violated clearly established law, summary judgment was properly denied. *Id.* If, on the other hand, Di Martini alleged only that Agent Ferrin violated his fifth amendment rights, without alleging any specific facts, summary judgment should have been granted.

■ Before deciding the question, we must briefly explore the role of affidavits in qualified immunity cases. Because the Supreme Court has barred discovery until after the trial judge can answer the legal question whether the alleged acts constitute a constitutional violation that was clearly established at the time, a plaintiff may often have no way to defend against a summary judgment motion other than through his own affidavit. In order to survive the motion, the plaintiff must set forth facts sufficient to raise the constitutional question. However, he cannot depose the percipient witnesses who could testify to those facts, and he may not himself have directly observed all of the critical events.

This dilemma requires some relaxation of the ordinary rules of admissibility in the case of affidavits used to oppose qualified

immunity motions. For example, since plaintiffs cannot compel testimony from others when opposing such motions, they must be allowed to rely on what those witnesses have told them, i.e. hearsay. Similarly, plaintiffs may not be able to obtain documents in the possession of others, and may be compelled, instead, to set forth their understanding of the contents of those documents in their own affidavits. Thus, the best evidence rule cannot always be strictly enforced. Also, a greater tolerance of speculation and inference must be afforded. At a later stage in the proceedings plaintiff will, of course, be required to establish the facts by more traditional means. However, where the issue to be resolved on summary judgment is solely whether the law was clearly established at a particular time, and compelled testimony regarding the operative facts is precluded, a plaintiff must be permitted to set forth his understanding of the facts whether or not his knowledge is first-hand or meets all the ordinary rules of evidence.

■ Applying this standard, we hold that the affidavits create a genuine dispute of material fact: whether Ferrin intimidated Di Martini into cooperating with him and caused him to be discharged from his employment at the Sands Hotel. A rational trier of fact could infer from Di Martini's alleged conversation with his employer that agent Ferrin in fact demanded Di Martini's discharge. Moreover, while the affidavit contained no reference to an attempt by Ferrin to coerce Di Martini's employer in order to secure Di Martini's discharge, Di Martini could not have attested to any coercion of the employer if he had no personal knowledge of such coercion. Although the affidavit contained no support for Di Martini's allegation that Agent Ferrin attempted

to coerce him into committing perjury, it does allege the facts from which Di Martini apparently inferred an intent to get him to testify "or else." [1]

Di Martini's third claim that Ferrin infringed upon Di Martini's right to pursue future employment, however, is not supported by his complaint. Di Martini's complaint contains no specific allegation that Di Martini was blacklisted in the casino industry or otherwise blocked in pursuing the career of his choice. There is no direct evidence to suggest that Ferrin's actions could have had such an effect on Di Martini's future. On summary judgment, a plaintiff is not entitled to survive on vague assumptions about informal communications within an industry.

### B. CLEARLY ESTABLISHED RIGHTS

■ If either of Di Martini's first two allegations violate clearly established statutory or constitutional rights of which a reasonable person should have known, *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738, then the district court properly denied agent Ferrin qualified immunity.[2] Because we hold that Di Martini's first allegation establishes such a right, we need not address his second allegation.

Since *Harlow*, the Supreme Court has explained that it is not enough that the general constitutional right alleged to have been violated was clearly established. The plaintiff must allege the right in a more particularized way: specifically, the contours of the right must be sufficiently clear to a reasonable official so that the actor would have understood that what he was doing violated that right. *Anderson*, 483

1. Because the district court stayed all discovery it was impossible for Di Martini to allege specifically either Ferrin's attempt to coerce Di Martini's employer in order to secure his discharge or his intent to coerce Di Martini into committing perjury.

2. Ferrin also asserts that even if this court finds that Di Martini's complaint alleged the violation of a clearly established property or liberty right, Di Martini essentially amended his complaint when he filed an affidavit opposing the summa-

ry judgment motion which was far more limited in scope than his original complaint. This claim has no merit. Even if we were to focus upon the affidavit rather than the complaint, it is not as limited in scope as Ferrin claims, and can be read to assert both that Ferrin attempted to intimidate him into cooperating in the investigation and that Ferrin caused him to be discharged from his employment at the Sands Hotel.

U.S. at 639–40, 107 S.Ct. at 3038–39, 97 L.Ed.2d 523 (1987).

The Supreme Court has noted that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). However, a plaintiff must show more than an expectation in continued employment; he must demonstrate a claim of entitlement to continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such an entitlement stems not from the Constitution itself but from "existing rules and understandings that stem from an outside source such as state law." *Id.*

While Di Martini may not be able to demonstrate that Nevada law provides him with an entitlement enforceable against his employer,[3] his complaint alleges that Ferrin, not the Sands Hotel, interfered with his private employment. The Eighth Circuit recently has adopted the view that even when an employee has no entitlement "to continued employment enforceable against his employer, he does have a right enforceable in law against third parties who unlawfully interfere with the employment relation." *Chernin v. Lyng*, 874 F.2d 501, 505 (8th Cir.1989).

In *Chernin*, the appellant lost his job with a meatpacking company when the U.S. Department of Agriculture made his termination a condition for providing inspection services which are required for the operation of a meatpacking business. The court noted that employees, even at-will employees, have a common-law right enforceable in law against third parties who unlawfully interfere with the employment relation. The court based its finding on the Supreme Court's decision in *Truax v. Raich*, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), which established a constitutional cause of action when a government agent unlawfully interferes with a private employment relationship. *Id.* at 41, 36 S.Ct. at 10; *see also Greene*, 360 U.S. at 492, 79 S.Ct. at 1411 ("[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment, ..."). The court further reasoned that neither *Raich*, *Greene*, nor the Supreme Court's recent decision in *Federal Deposit Insurance Corp. v. Mallen*, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) (FDIC cannot arbitrarily interfere with a bank employee's employment relationship with a bank), require that an employee demonstrate an entitlement to future employment enforceable against his or her employer in order to be protected under the due process clause against arbitrary government interference. *Chernin*, 874 F.2d at 506.

We agree with the Eight Circuit's reasoning and hold that even if he did not have an entitlement to employment enforceable against the Sands Hotel, Di Martini did have clearly established liberty and proper-

---

**3.** This court has held that state law can create a constitutionally significant property interest in private employment. *See Merritt v. Mackey*, 827 F.2d 1368, 1374 (9th Cir.1987) (Norris, J., concurring). Di Martini's allegations, however, fail to fit squarely within the relevant and clearly established Nevada law. First, the Nevada Supreme Court has noted that a contract for continued employment can be the basis of a property or liberty interest. *Tarkanian v. National Collegiate Athletic Assoc.*, 103 Nev. 331, 741 P.2d 1345 (1987), *rev'd on other grounds,* — U.S. —, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). The record on appeal, however, does not reveal anything about the nature of Di Martini's employment contract. Second, Di Martini relies on Nevada case law establishing that an at-will employee has at least a limited right to contin-

ued employment because he cannot be terminated when the purpose of the termination offends public policy. *See Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984) (Nevada adopts a public policy exception to at-will employment rule and recognizes a tort action for retaliatory discharge resulting from employee filing of worker's compensation claim). Public policy is not offended when an individual is asked to cooperate with law enforcement officials. Di Martini argues that he had an entitlement to continued employment at least to the extent that termination was based solely on wrongful coercion. As Ferrin points out, however, the record is devoid of any description of Di Martini's employment arrangement at the Sands Hotel. Thus we cannot properly notice the fact implicitly asserted by Di Martini that he was an at-will employee.

ty interests against officious third party interference with his private employment. Because we find that Di Martini alleged sufficient facts to support a claim that Ferrin violated this right, Ferrin is not entitled to qualified immunity and the court properly denied his motion for summary judgment.

This court's decision in *Johnson v. Serv–Air, Inc.*, 833 F.2d 1016 (1987) does not bind us to a contrary conclusion. It is an unpublished disposition, and has no precedential value. *See* Ninth Circuit Rule 36–3 (1989). Ferrin, however, claims that *Johnson* supports his position that the due process violations alleged here are not clearly established. He asks this court to consider *Johnson* despite the fact that it is unpublished. Because it is not directly "relevant under the doctrines of law of the case, res judicata, or collateral estoppel," Ninth Circuit Rule 36–3 (1989), we must decide this case without considering *Johnson*. Ferrin's request is therefore denied.

The district court's order denying summary judgment based on qualified immunity, is AFFIRMED. This case is REMANDED to the district court to lift the protective order staying discovery and proceed to trial on the merits of Di Martini's fifth amendment claim. Costs on appeal should be stayed pending the determination of the "prevailing party."

AFFIRMED AND REMANDED.