8 F.3d 29
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Stanley C. RYBACHEK and Rosalie A. Rybachek, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant,
Leroy S. Loiselle, Defendant-Appellant.
 No. 91-35160.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1992.*
Decided Sept. 29, 1993.
 
 1
 Before HUG and POOLE, Circuit Judges, and PRO,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 This is a Bivens[1] action. The plaintiffs-appellees, two Alaskan gold miners, charge that in the course of enforcing environmental regulations, an Environmental Protection Agency official violated their constitutional rights.
 
 
 4
 Appellees allege that the EPA official, Leroy Loiselle, conducted harassing helicopter "overflights" of their mine, publicly branded them "flagrant violators" of the Clean Water Act, publicly equated Alaskan gold miners with child molesters and drug traffickers, and singled them out for enforcement proceedings, all because they are vocal critics of the EPA and its practices.
 
 
 5
 The miners also allege appellant violated their Fourth Amendment rights by conducting illegal "searches" of their mine site and "seizures" of environmental samples.
 
 
 6
 Loiselle moved the district court for summary judgment, asserting qualified immunity. The court held Loiselle not immune. This is a limited appeal of only the qualified immunity question. We now reverse.
 
 I.
 
 7
 "Pursuant to the collateral order doctrine, we have jurisdiction over interlocutory appeals from orders denying summary judgment on the basis of qualified immunity." Act Up!/Portland v. Bagley, 988 F.2d 868, 879 (9th Cir.1993) (citing Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). This court reviews de novo a district court's denial of a qualified immunity defense. Act Up!, 988 F.2d at 871.
 
 II.
 
 8
 The parties disagree on what issues are here on appeal. According to Loiselle, only two claims have survived the district court's ruling: first, a claim that he selectively prosecuted the Rybacheks for criticizing the EPA. Second, a claim that his onsite inspections violated the Rybacheks' Fourth Amendment rights.
 
 
 9
 The Rybacheks contend that four claims have survived the district court's ruling. They agree with Loiselle about the selective enforcement and Fourth Amendment claims. But they also argue the court left standing a First Amendment claim distinct from their selective prosecution claim. And they allege the continued vitality of their claim that the EPA deprived them of due process by not granting them hearings they requested and by not fully explaining enforcement letters EPA sent them.
 
 
 10
 Of these two additional claims, the Rybacheks are right about the first but mistaken about the second. They are right that a First Amendment claim distinct from their selective prosecution claim has survived the court's rulings. The two are distinct claims. The First Amendment claim alleges that all of Loiselle's activities--the helicopter overflights, the public statements, the entry onto their property, etc.--were aimed at silencing or punishing the Rybacheks' speech. The selective prosecution claim, on the other hand, focuses more narrowly on the EPA's enforcement proceedings, and is based on the equal protection theory that one class of offenders should not be singled out for prosecution among several who are equally liable. See Wayte v. United States, 470 U.S. 598, 608 & n. 9 (1983).
 
 
 11
 Courts have recognized both types of claims. See Wayte, 470 U.S. at 604-610, 610-614 (separately analyzing selective prosecution and direct First Amendment claims); Gibson v. United States, 781 F.2d 1334, 1338, 1342-43 (9th Cir.1986) (reviewing a claim of harassment, but not prosecution, because of First Amendment activities), cert. denied, 479 U.S. 1054 (1987).
 
 
 12
 But the Rybacheks are mistaken that their fourth proposed claim, dealing with due process, has survived the district court's rulings. The allegations in that claim have either been expressly rejected by the district court, or implicitly rejected by the court's ruling that only the First and Fourth Amendment claims remained for trial.
 
 
 13
 The claims on appeal are thus three: a First Amendment claim, a selective enforcement claim, and a Fourth Amendment claim. The question for this court in each instance is not whether the claim has merit, but whether qualified immunity shields Loiselle from having to answer for the claim at trial.
 
 III.
 
 14
 Government officials performing discretionary functions are shielded from liability so long as their conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Fry v. Melaragno, 939 F.2d 832, 838 (9th Cir.1991) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).
 
 
 15
 Even if a constitutional violation occurred, the official is immune if "the right asserted by the plaintiff was not 'clearly established' or [the official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991).
 
 
 16
 The reasonableness of the defendant's conduct should ordinarily be measured strictly objectively; the Supreme Court has made clear that an official's subjective bad faith, without more, will not suffice to subject the official to trial. Harlow, 457 U.S. at 817-19. See F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1316 (9th Cir.1989). However, there is an exception to this rule where the official's intent or motive is an essential element of the plaintiff's claim. For example, where an official is accused of racial discrimination, or where, as here, an official is accused of singling out suspects because they are vocal, "the court must consider the actor's intent in carrying out the challenged act...." F.E. Trotter, 869 F.2d at 1316.
 
 
 17
 Finally, the Supreme Court has repeatedly stressed that qualified immunity is "an 'immunity from suit ' rather than a mere defense to liability,' " and it is therefore effectively lost if a case is permitted to go to trial. Wyatt v. Cole, 112 S.Ct. 1827, 1832 (1992) (quoting Mitchell v. Forsyth, 472 U.S. at 526) (emphasis in original).
 
 
 18
 Accordingly, the existence of qualified immunity "must be determined ... at the earliest possible point in the litigation." Act Up!, 988 F.2d at 873. Whether the law governing the conduct at issue is clearly established is a question of law for the district court, as is the determination whether a reasonable officer could have believed his or her actions were lawful. Id. at 872, 873. However, "[i]f a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial." Id. at 873.
 
 
 19
 A summary judgment motion based on qualified immunity must meet the usual standards; the non-moving party must come forward with specific facts showing there is a genuine issue of fact for trial. DiMartini v. Ferren, 889 F.2d 922, 926 (9th Cir.1989), amended, 906 F.2d 465 (1990), cert. denied, 111 S.Ct. 2796 (1991).
 
 
 20
 But unlike the usual summary judgment motion, a motion based on qualified immunity usually allows "a greater tolerance of speculation and inference" in evaluating the plaintiff's claims. DiMartini, 889 F.2d at 927; Pelletier v. Fed. Home Loan Bank of San Francisco, 968 F.2d 865, 872 (9th Cir.1992) (quoting DiMartini ).
 
 
 21
 Indeed, this circuit has held that "[i]n reviewing a district court's denial of summary judgment advanced on grounds of qualified immunity, we must accept as true the facts stated in the [plaintiff's] affidavits." DiMartini, 889 F.2d at 926 (citation omitted).
 
 
 22
 But the rationale behind these very generous standards (generous, at least, from the plaintiff's perspective) does not apply with full force here. Since an assertion of qualified immunity normally stays discovery, most plaintiffs have accumulated very little evidence with which to oppose the motion. DiMartini, 889 F.2d at 926-27; Pelletier, 968 F.2d at 872. Here, however, the Rybacheks have taken dozens of depositions, and have supplemented them with affidavits and other documents. Hence, the Rybacheks' record is entitled to somewhat less deference than the usual plaintiff in a qualified immunity case.[2]
 
 IV.
 
 23
 We turn to the Rybacheks' First Amendment claim. The first question in our analysis is whether the Rybacheks had a clearly established right to be free from Loiselle's alleged conduct. This Circuit has stated that "[s]tate action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.1986). In Gibson, we reinstated Bivens claims alleging the FBI harassed the plaintiffs in response to their political speech and activities.
 
 
 24
 While we stated that "plaintiffs may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement activities," we noted that in that case the plaintiffs had "alleged discrete acts of police surveillance and intimidation directed solely at silencing them." Id. (citing Laird v. Tatum, 408 U.S. 1 (1972)).
 
 
 25
 We have doubts that our holding in Gibson is of any help to the Rybacheks here. First, the plaintiffs in Gibson alleged "an unremitting campaign of terror and harassment" by law enforcement officials and their agents. Id. at 1337. They alleged, for instance, that the FBI directed agents to "enter [their] garage surreptitiously, rummage through and remove sensitive documents belonging to [a plaintiff], and then burn the garage down to cover the traces." Id. at 1343. Even accepting all of the Rybacheks' allegations as true, they do not amount to anything close to the conduct alleged in Gibson.
 
 
 26
 In addition, Gibson referred to "acts of police surveillance and intimidation directed solely at silencing" the plaintiffs. Id. at 1338 (emphasis added). Accordingly, the Rybacheks must raise a genuine question that Loiselle acted solely to silence them.
 
 
 27
 We think the Rybacheks fail in this effort. Their principal evidence is Loiselle's statement that all the EPA had to do was to "take out a few vocal" miners and "the rest would follow like sheep." The Rybacheks also rely on Loiselle's statement to their neighbors that he "planned to make an example of the Rybacheks."[3]
 
 
 28
 Loiselle attributes these comments to the entirely legitimate purpose of pursuing the most serious violators in order to maximize deterrent impact. Cf. United States v. Taylor, 693 F.2d 919, 923 (9th Cir.1982) (selective prosecution of illegal activity permissible for purposes of enhancing deterrent effect).[4] His reference to other miners following "like sheep" certainly suggests his goal was to inhibit pollution, not expression. Even assuming arguendo that the Rybacheks have shown Loiselle to have also been motivated by an additional, recriminatory, purpose, that would not carry the day. The Rybacheks must show--or at least raise a genuine issue of fact--that Loiselle's sole purpose was recriminatory. In our opinion they have not done this.
 
 
 29
 Accordingly, the Rybacheks do not demonstrate that Loiselle violated a clearly established right. We therefore reverse the district court's denial of summary judgment on this claim.
 
 V.
 
 30
 We turn to the selective enforcement claim. According to the Rybacheks, their outspokenness not only animated Loiselle's alleged harassment activities, it also underlay his decision to select them for formal prosecution.
 
 Selective enforcement requires a showing:
 
 31
 (1) That others are generally not prosecuted for the same conduct; [and]
 
 
 32
 (2) The decision to prosecute this defendant was based upon impermissible grounds such as race, religion or the exercise of constitutional rights.
 
 
 33
 Church of Scientology v. Comm'r Internal Revenue, 823 F.2d 1310, 1321 (9th Cir.1987), cert. denied, 486 U.S. 1015 (1988).
 
 
 34
 The Rybacheks fail to satisfy the first of these prerequisites. They have not shown that similarly-situated miners who were not vocal were not prosecuted.[5] Consequently, we need not reach the second prerequisite. We hold that Loiselle is entitled to summary judgment on this claim as well.
 
 VI.
 
 35
 Finally, the Rybacheks assert that Loiselle's helicopter overflights and on-site mine inspections violated their Fourth Amendment rights. We again hold, however, that qualified immunity shields Loiselle from prosecution.
 
 
 36
 Considering first Loiselle's on-site inspections of the mine, this activity is permitted under the "open fields" doctrine. The Supreme Court has held that Fourth Amendment protection does not extend to "open fields" beyond the home and its curtilage. E.g., Oliver v. United States, 466 U.S. 170, 180 (1984). Here the Rybacheks complain that on his way to the on-site inspections, Loiselle traversed their private drive, crossed a cable stretched across the drive, and ignored many "no trespassing" signs. But that is almost exactly what the police officers did in Oliver on their way to the defendant's marijuana fields. 466 U.S. at 173-74. The court upheld that search as constitutional. 466 U.S. at 184.
 
 
 37
 The Ninth Circuit has also upheld such a search, in a case in which the law enforcement officers disregarded many "no trespassing" signs and drove one mile up a suspect's private dirt road. United States v. Roberts, 747 F.2d 537, 540-42 (9th Cir.1984).
 
 
 38
 The Rybacheks' private drive and the mine site are not part of their home or its curtilage. Hence, Loiselle's on-site inspections did not violate the Rybacheks' Fourth Amendment rights.
 
 
 39
 Nor did the helicopter overflights of the Rybacheks' mine site violate the Fourth Amendment. Not only were the flights outside of the Rybacheks' home and curtilage, but even within the curtilage, helicopter overflights and aerial photography are permitted. Florida v. Riley, 488 U.S. 445, 448-452 (1989) (upholding helicopter overflight 400 feet over a greenhouse within defendant's curtilage); Dow Chemical Co. v. United States, 476 U.S. 227, 239 (1986) (upholding aerial photography of an industrial plant from navigable airspace).
 
 
 40
 Hence, neither Loiselle's overflights nor his on-site inspections violated clearly established rights of which he should have been aware. Accordingly, Loiselle is entitled to summary judgment on this claim as well.
 
 
 41
 Qualified immunity shields Loiselle from each of the Rybacheks' claims. We reverse the district court's summary judgment ruling, and remand for entry of summary judgment in Loiselle's favor.
 
 
 
 *
 Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Bivens v. Six Unknown Named Narcotics Agents, 403 U.S. 388 (1971)
 
 
 [2]
 We reject Loiselle's argument that the Rybacheks' burden should actually be greater in this case
 
 
 [3]
 Although the Rybacheks also cite a meeting at which they allege they were threatened and told to stop publishing anti-EPA articles, they have failed to link this alleged threat to Loiselle. Rosalie Rybachek acknowledged in her deposition that it was a government lawyer, not Loiselle, who allegedly put forth the "gag order." The fact that Loiselle attended the meeting, without more, is not enough
 
 
 [4]
 The Rybacheks maintain their activity was not illegal. But the Rybacheks were violating presumptively valid EPA pollution limits. Loiselle was justified in considering the Rybacheks to be engaged in illegal activity
 
 
 [5]
 The Rybacheks point out that not all permit violators have been prosecuted. But they do not establish that these other violators were polluting at a similar level, nor that they were not as vocal as the Rybacheks. Unless similarly-situated non-vocal violators were not prosecuted, there has not been selective prosecution